03 OCT 24  PM 4: 19

NORTHERN DISTRICT OF OHIO
AKRON

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF OHIO

EASTERN DIVISION

PLUMBERS AND PIPEFITTERS LOCAL 572 ) Case No.
PENSION FUND, Derivatively On Behalf of )
GOODYEAR TIRE & RUBBER COMPANY )

**5:03CV 2180**

227 Ben Allen Road
Nashville, Tennessee 37207

)
)  VERIFIED SHAREHOLDER DERIVATIVE
)  COMPLAINT FOR BREACH OF
)  FIDUCIARY DUTY, ABUSE OF
)  CONTROL, GROSS MISMANAGEMENT,
)  WASTE OF CORPORATE ASSETS, AND
)  UNJUST ENRICHMENT
)

Plaintiff,

vs.

SAMIR G. GIBARA, ROBERT J. KEEGAN, )
ROBERT W. TIEKEN, STEVEN A. MINTER, )
AGNAR PYTTE, JOHN G. BREEN, WILLIAM )
J. HUDSON, JR., JAMES C. BOLAND, JAMES )
M. ZIMMERMAN, EDWARD T. FOGARTY, )
SUSAN E. ARNOLD, GARY D. FORSEE, )
MARTIN D. WALKER, KATHRYN D. )
WRISTON, KATHERINE G. FARLEY, )
GEORGE H. SCHOFIELD, WILLIAM C. )
TURNER, PHILIP A. LASKAWY, WILLIAM E. )
BUTLER, THOMAS H. CRUIKSHANK, )

)
)
)
C/o THE GOODYEAR TIRE AND RUBBER )
COMPANY )
1144 East market Street )
Akron, Ohio 44316

Defendants,

- and -

GOODYEAR TIRE & RUBBER COMPANY, an

)
)

**JUDGE DOWD**

**MAG. JUDGE GALLAS**

DEMAND FOR JURY TRIAL

SCANLON & GEARINGER
CO., L.P.A.
ATTORNEYS AT LAW
FIRST NATIONAL TOWER
SUITE 1100
106 S. MAIN STREET
AKRON, OHIO 44308-1463
(330) 376-4558

Ohio corporation,
1144 East market Street
Akron, Ohio 44316

Nominal Defendant.

SCANLON & GEARINGER
CO., L.P.A.
ATTORNEYS AT LAW
FIRST NATIONAL TOWER
SUITE 1100
106 S. MAIN STREET
AKRON, OHIO 44308-1463
(330) 376-4558

Plaintiff, by its attorneys, submits this Verified Derivative Complaint (the "Complaint") against the defendants named herein.

## NATURE OF THE ACTION

1.     This is a shareholder derivative action brought by a shareholder of Goodyear Tire & Rubber Company ("Goodyear" or the "Company"), on behalf of the Company against certain of its officers and directors seeking to remedy defendants' violations of state law, including breaches of fiduciary duties, abuse of control, gross mismanagement, waste of corporate assets and unjust enrichment that occurred between October 1998 and the present (the "Relevant Period") and that have caused substantial losses to Goodyear and other damages, such as to its reputation and goodwill.

## JURISDICTION AND VENUE

2.     This Court has jurisdiction over this action pursuant to 28 U.S.C. §1331 in that plaintiff's claims arise in part under the Constitution and laws of the United States, including the Sarbanes-Oxley Act of 2002. This Court has supplemental jurisdiction pursuant to 28 U.S.C. §1367(a). Additionally, this Court has jurisdiction over this action pursuant to 28 U.S.C. §1332(a)(1) in that plaintiff and defendants are citizens of different states and the matter in controversy exceeds $75,000, exclusive of interest and costs.

3.     This action is not a collusive one designed to confer jurisdiction on a court of the United States which it would not otherwise have.

4.     Venue is proper in the District because nominal defendant Goodyear is headquartered in this District and thus a substantial portion of the transactions and wrongs complained of herein, including the defendants' primary participation in the wrongful acts detailed herein, occurred in this District. One or more of the defendants either resides in or maintains executive offices in this district, and defendants have received substantial compensation in this District by engaging in numerous activities and conducting business here, which had an effect in this District.

## SUMMARY OF THE ACTION

5.     On October 22, 2003, Goodyear announced that its 1998-2002 results would be restated to eliminate revenue that had been improperly recorded as revenues:

Goodyear Tire & Rubber Co. said it will restate earnings for the past five years,

SCANLON & GEARINGER
CO., L.P.A.
ATTORNEYS AT LAW
FIRST NATIONAL TOWER
SUITE 1100
106 S. MAIN STREET
AKRON, OHIO 44308-1403
(330) 376-4558

decreasing net income by as much as $100 million over the period because of errors in intercompany billing systems and the implementation of a computerized accounting system.

In an announcement after the close of trading, Goodyear postponed the release of its third-quarter results scheduled for Thursday until the middle of next month. However, the company said it expects to report a loss for the quarter in the range of $90 million to $115 million, or 51 cents to 66 cents a share.

The huge restatement is only the latest problem to befall the Akron, Ohio, tire maker. Goodyear earlier this year narrowly averted a liquidity crisis by restructuring its $5 billion debt and negotiating a new line of credit. The company has struggled to cut costs and recently won concessions from its union to shed workers and close some factory capacity.

6.     Goodyear said it detected the errors while reviewing "various accounts, including ERP- impacted balance-sheet accounts." ERP is the computerized accounting system adopted by the Company in 1999. The Company said those accounts were principally in its North American tire and Engineered Products businesses. The decision to restate the earlier period results was made by Goodyear's management with the approval of the audit committee of the Company's Board and its independent auditors, PricewaterhouseCoopers LLP.

## THE PARTIES

7.     Plaintiff Plumbers and Pipefitters Local 572 Pension Fund is, and was at times relevant hereto, an owner and holder of Goodyear common stock. Plaintiff is a citizen of Tennessee.

8.     Nominal defendant Goodyear is a corporation organized and existing under the laws of the State of Ohio with its headquarters located at 1144 East Market Street, Akron, Ohio. Goodyear manufactures tires and rubber products. It operates in segments, including North American Tire, European Union Tire, Eastern Europe, Africa and Middle East Tire, Latin American Tire, Asia Tire, Engineered Products (which develops, manufactures, distributes and sells rubber and thermoplastic products worldwide), and Chemical Products (which develops, manufactures, distributes and sells synthetic rubber and rubber lattices). The Company has 175.3 million shares of its public stock traded on the New York Stock Exchange.

9.     Defendant Samir G. Gibara ("Gibara") was, at all times relevant hereto, Chairman of the Board of Goodyear. Gibara was Chief Executive Officer ("CEO") of Goodyear until January 1, 2003. Because of Gibara's positions, he knew the adverse non-public information about the business of Goodyear, as well as its finances, markets and present and future business prospects, via access

SCANLON & GEARINGER
Co., L.P.A.
ATTORNEYS AT LAW
FIRST NATIONAL TOWER
SUITE 1100
106 S. MAIN STREET
AKRON, OHIO 44308-1463
(330) 376-4558

to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and Board of Directors' meetings and committees thereof and via reports and other information provided to him in connection therewith. During the Relevant Period, Gibara participated in the issuance of false and/or misleading statements, including the preparation of the false and/or misleading press releases and Securities and Exchange Commission ("SEC") filings. For FY:02, FY:01, FY:00 and FY:99, Goodyear paid defendant Gibara $1,703,582, $2,225,151, 1,325,227 and $1,634,270, respectively, in salary, bonus and other compensation, and granted him 200,000, 170,000 and 250,000 options to purchase Goodyear stock, respectively from FY:01-FY:99. During the Relevant Period, Gibara sold 7,200 shares of Goodyear stock for proceeds of $449,382. Gibara is a citizen of Ohio.

10. Defendant Robert J. Keegan ("Keegan") was, at times relevant hereto, President and CEO of Goodyear. Keegan has been a director since October 2000. Because of Keegan's positions, he knew the adverse non-public information about the business of Goodyear, as well as its finances, markets and present and future business prospects, via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and Board of Directors meetings and committees thereof and via reports and other information provided to him in connection therewith. During the Relevant Period, Keegan participated in the issuance of false and/or misleading statements, including the preparation of the false and/or misleading press releases and SEC filings. For FY:02, FY:01, and FY:00, Goodyear paid defendant Keegan $853,350, $1,480,177 and $1,500,500, respectively, in salary, bonus and other compensation, and granted him 140,000, 90,000 and 330,000 options to purchase Goodyear stock, respectively. Keegan is a citizen of Ohio.

11. Defendant Robert W. Tieken ("Tieken") was, at times relevant hereto, Chief Financial Officer ("CFO") of Goodyear. Because of Tieken's position, he knew the adverse non-public information about the business of Goodyear, as well as its finances, markets and present and future business prospects, via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management meetings and via reports and other information provided to him in connection therewith. During the Relevant Period, Tieken participated in the issuance of false and/or misleading statements, including the preparation of the

SCANLON & GEARINGER
CO., L.P.A.
ATTORNEYS AT LAW
FIRST NATIONAL TOWER
SUITE 1100
106 S. MAIN STREET
AKRON, OHIO 44308-1463
(330) 376-4558

-4-

false and/or misleading press releases and SEC filings.  For FY:02, FY:01, FY:00 and FY:99 Goodyear paid defendant Tieken $562,639, $759,039, $525,238 and $563,113 respectively, in salary, bonus and other compensation, and granted him 40,000, 40,000, 35,000 and 45,000 options to purchase Goodyear stock, respectively. Tieken is a citizen of Ohio.

12.    Defendant Steven A. Minter ("Minter") is, and at all times relevant hereto was, a director of Goodyear.  Because of Minter's position, he knew the adverse non-public information about the business of Goodyear, as well as its finances, markets and present and future business prospects, via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at Board of Directors' meetings and committees thereof and via reports and other information provided to him in connection therewith.  During the Relevant Period, Minter participated in the issuance of false and/or misleading statements, including the preparation of the false and/or misleading press releases and SEC filings. Minter is a citizen of Ohio.

13.    Defendant Agnar Pytte ("Pytte") is, and at all times relevant hereto was, a director of Goodyear.  Because of Pytte's position, he knew the adverse non-public information about the business of Goodyear, as well as its finances, markets and present and future business prospects, via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at Board of Directors' meetings and committees thereof and via reports and other information provided to him in connection therewith.  During the Relevant Period, Pytte participated in the issuance of false and/or misleading statements, including the preparation of the false and/or misleading press releases and SEC filings. Pytte is a citizen of Ohio.

14.    Defendant John G. Breen ("Breen") is, and at all times relevant hereto was, a director of Goodyear.  Because of Breen's position, he knew the adverse non-public information about the business of Goodyear, as well as its finances, markets and present and future business prospects, via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at Board of Directors' meetings and committees thereof and via reports and other information provided to him in connection therewith.  During the Relevant Period, Breen participated in the issuance of false and/or misleading statements, including the preparation of the false and/or misleading press releases and SEC filings. Breen is a citizen of Florida.

15.    Defendant William J. Hudson, Jr. ("Hudson") is, and at all times relevant hereto was,

SCANLON & GEARINGER Co., L.P.A.
ATTORNEYS AT LAW
FIRST NATIONAL TOWER
SUITE 1100
106 S. MAIN STREET
AKRON, OHIO 44308-1463
(330) 376-4558

a director of Goodyear. Because of Hudson's position, he knew the adverse non-public information about the business of Goodyear, as well as its finances, markets and present and future business prospects, via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at Board of Directors' meetings and committees thereof and via reports and other information provided to him in connection therewith. During the Relevant Period, Hudson participated in the issuance of false and/or misleading statements, including the preparation of the false and/or misleading press releases and SEC filings. Hudson is a citizen of Pennsylvania.

16.     Defendant James C. Boland ("Boland") is a director of Goodyear and has been since December 2002. Because of Boland's position, he knew the adverse non-public information about the business of Goodyear, as well as its finances, markets and present and future business prospects, via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at Board of Directors' meetings and committees thereof and via reports and other information provided to him in connection therewith. During the Relevant Period, Boland participated in the issuance of false and/or misleading statements, including the preparation of the false and/or misleading press releases and SEC filings. Boland is a citizen of Ohio.

17.     Defendant James M. Zimmerman ("Zimmerman") is a director of Goodyear and has been since June 2001. Because of Zimmerman's position, he knew the adverse non-public information about the business of Goodyear, as well as its finances, markets and present and future business prospects, via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at Board of Directors' meetings and committees thereof and via reports and other information provided to him in connection therewith. During the Relevant Period, Zimmermam participated in the issuance of false and/or misleading statements, including the preparation of the false and/or misleading press releases and SEC filings. Zimmerman is a citizen of Ohio.

18.     Defendant Gary D. Forsee ("Forsee") is a director of Goodyear and has been since August 2002. Because of Forsee's position, he knew the adverse non-public information about the business of Goodyear, as well as its finances, markets and present and future business prospects, via access to internal corporate documents, conversations and connections with other corporate officers

SCANLON & GEARINGER
CO., L.P.A.
ATTORNEYS AT LAW
FIRST NATIONAL TOWER
SUITE 1100
106 S. MAIN STREET
AKRON, OHIO 44308-1463
(330) 376-4558

and employees, attendance at Board of Directors' meetings and committees thereof and via reports and other information provided to him in connection therewith. During the Relevant Period, Forsee participated in the issuance of false and/or misleading statements, including the preparation of the false and/or misleading press releases and SEC filings. Forsee is a citizen of Georgia.

19.     Defendant Susan E. Arnold ("Arnold") is a director of Goodyear and has been since January 2003. Because of Arnold's position, she knew the adverse non-public information about the business of Goodyear, as well as its finances, markets and present and future business prospects, via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at Board of Directors' meetings and committees thereof and via reports and other information provided to her in connection therewith. During the Relevant Period, Arnold participated in the issuance of false and/or misleading statements, including the preparation of the false and/or misleading press releases and SEC filings. Arnold is a citizen of Ohio.

20.     Defendant Martin D. Walker ("Walker") was a director of Goodyear at all times relevant hereto, until May 2003. Because of Walker's position, he knew the adverse non-public information about the business of Goodyear, as well as its finances, markets and present and future business prospects, via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at Board of Directors' meetings and committees thereof and via reports and other information provided to him in connection therewith. During the Relevant Period, Walker participated in the issuance of false and/or misleading statements, including the preparation of the false and/or misleading press releases and SEC filings. Walker is a citizen of California.

21.     Defendant Kathryn D. Wriston  ("Wriston") was a director of Goodyear at times relevant hereto, until May 2003. Because of Wriston's position, she knew the adverse non-public information about the business of Goodyear, as well as its finances, markets and present and future business prospects, via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at Board of Directors' meetings and committees thereof and via reports and other information provided to her in connection therewith. During the Relevant Period, Wriston participated in the issuance of false and/or misleading statements, including the preparation of the false and/or misleading press releases and SEC filings. Wriston is

SCANLON & GEARINGER
CO., L.P.A.
ATTORNEYS AT LAW
FIRST NATIONAL TOWER
SUITE 1100
106 S. MAIN STREET
AKRON, OHIO 44308-1463
(330) 376-4558

a citizen of New York.

22.    Defendant Edward T. Fogarty  ("Fogarty") was a director of Goodyear at times relevant hereto, until May 2003.  Because of Fogarty's position, he knew the adverse non-public information about the business of Goodyear, as well as its finances, markets and present and future business prospects, via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at Board of Directors' meetings and committees thereof and via reports and other information provided to him in connection therewith.  During the Relevant Period, Fogarty participated in the issuance of false and/or misleading statements, including the preparation of the false and/or misleading press releases and SEC filings. Fogarty is a citizen of Connecticut.

23.    Defendant Katherine G. Farley ("Farley") was a director of Goodyear at all times relevant hereto, until June 2001.  Because of Farley's position, she knew the adverse non-public information about the business of Goodyear, as well as its finances, markets and present and future business prospects, via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at Board of Directors' meetings and committees thereof and via reports and other information provided to her in connection therewith.  During the Relevant Period, Farley participated in the issuance of false and/or misleading statements, including the preparation of the false and/or misleading press releases and SEC filings. Farley is a citizen of New York.

24.    Defendant George H. Schofield ("Schofield") was a director of Goodyear at all times relevant hereto, until April 2001.  Because of Schofield's position, he knew the adverse non-public information about the business of Goodyear, as well as its finances, markets and present and future business prospects, via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at Board of Directors' meetings and committees thereof and via reports and other information provided to him in connection therewith.  During the Relevant Period, Schofield participated in the issuance of false and/or misleading statements, including the preparation of the false and/or misleading press releases and SEC filings. Schofield is a citizen of Massachusetts.

25.    Defendant  William C. Turner ("Turner") was a director of Goodyear at all times

SCANLON & GEARINGER
Co., L.P.A.
ATTORNEYS AT LAW
FIRST NATIONAL TOWER
SUITE 1100
106 S. MAIN STREET
AKRON, OHIO 44308-1463
(330) 376-4558

relevant hereto, until April 2001. Because of Turner's position, he knew the adverse non-public information about the business of Goodyear, as well as its finances, markets and present and future business prospects, via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at Board of Directors' meetings and committees thereof and via reports and other information provided to him in connection therewith. During the Relevant Period, Turner participated in the issuance of false and/or misleading statements, including the preparation of the false and/or misleading press releases and SEC filings. Turner is a citizen of Arizona.

26. Defendant Philip A. Laskawy ("Laskawy") was a director of Goodyear at times relevant hereto, until December 2002. Because of Laskawy's position, he knew the adverse non-public information about the business of Goodyear, as well as its finances, markets and present and future business prospects, via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at Board of Directors' meetings and committees thereof and via reports and other information provided to him in connection therewith. During the Relevant Period, Laskawy participated in the issuance of false and/or misleading statements, including the preparation of the false and/or misleading press releases and SEC filings. Laskawy is a citizen of Connecticut.

27. Defendant William E. Butler ("Butler") was a director of Goodyear at all times relevant hereto, until April 2002. Because of Butler's position, he knew the adverse non-public information about the business of Goodyear, as well as its finances, markets and present and future business prospects, via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at Board of Directors' meetings and committees thereof and via reports and other information provided to him in connection therewith. During the Relevant Period, Butler participated in the issuance of false and/or misleading statements, including the preparation of the false and/or misleading press releases and SEC filings. Butler is a citizen of Ohio.

28. Defendant Thomas H. Cruikshank ("Cruikshank") was a director of Goodyear at all times relevant hereto, until April 2002. Because of Cruikshank's position, he knew the adverse non-public information about the business of Goodyear, as well as its finances, markets and present

SCANLON & GEARINGER
Co., L.P.A.
ATTORNEYS AT LAW
FIRST NATIONAL TOWER
SUITE 1100
106 S. MAIN STREET
AKRON, OHIO 44308-1463
(330) 376-4558

and future business prospects, via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at Board of Directors' meetings and committees thereof and via reports and other information provided to him in connection therewith. During the Relevant Period, Cruikshank participated in the issuance of false and/or misleading statements, including the preparation of the false and/or misleading press releases and SEC filings. Cruikshank is a citizen of California.

29.     The defendants identified in ¶¶9-10, 12-28 are referred to herein as the "Director Defendants." The defendants identified in ¶¶9-11 are referred to herein as the "Officer Defendants." The defendant identified in ¶9 is referred to herein as the "Insider Selling Defendant." Collectively, the Director Defendants, the Officer Defendants and the Insider Selling Defendant are referred to herein as the "Individual Defendants."

### DUTIES OF THE INDIVIDUAL DEFENDANTS

30.     By reason of their positions as officers, directors, and/or fiduciaries of Goodyear and because of their ability to control the business and corporate affairs of Goodyear, the Individual Defendants owed Goodyear and its shareholders fiduciary obligations of trust, loyalty, good faith and due care, and were and are required to use their utmost ability to control and manage Goodyear in a fair, just, honest and equitable manner. The Individual Defendants were and are required to act in furtherance of the best interests of Goodyear and its shareholders so as to benefit all shareholders equally and not in furtherance of their personal interest or benefit.

31.     Each director and officer of the Company owes to Goodyear and its shareholders the fiduciary duty to exercise good faith and diligence in the administration of the affairs of the Company and in the use and preservation of its property and assets, and the highest obligations of fair dealing. In addition, as officers and/or directors of a publicly held company, the Individual Defendants had a duty to promptly disseminate accurate and truthful information with regard to the Company's revenue, margins, operations, performance, management, projections and forecasts so that the market price of the Company's stock would be based on truthful and accurate information.

32.     The Individual Defendants, because of their positions of control and authority as directors and/or officers of Goodyear, were able to and did, directly and/or indirectly, exercise control over the wrongful acts complained of herein, as well as the contents of the various public

SCANLON & GEARINGER
Co., L.P.A.
ATTORNEYS AT LAW
FIRST NATIONAL TOWER
SUITE 1100
106 S. MAIN STREET
AKRON, OHIO 44308-1463
(330) 376-4558

-10-

statements issued by the Company. Because of their advisory, executive, managerial and directorial positions with Goodyear, each of the Individual Defendants had access to adverse non-public information about the financial condition, operations, and improper representations of Goodyear.

33.     At all times relevant hereto, each of the Individual Defendants was the agent of each of the other Individual Defendants and of Goodyear, and was at all times acting within the course and scope of such agency.

34.     To discharge their duties, the officers and directors of Goodyear were required to exercise reasonable and prudent supervision over the management, policies, practices and controls of the financial affairs of the Company. By virtue of such duties, the officers and directors of Goodyear were required to, among other things:

(a)     refrain from acting upon material inside corporate information to benefit themselves;

(b)     ensure that the Company complied with its legal obligations and requirements, including acting only within the scope of its legal authority and disseminating truthful and accurate statements to the SEC and the investing public;

(c)     conduct the affairs of the Company in an efficient, business-like manner so as to make it possible to provide the highest quality performance of its business, to avoid wasting the Company's assets, and to maximize the value of the Company's stock;

(d)     properly and accurately guide investors and analysts as to the true financial condition of the Company at any given time, including making accurate statements about the Company's financial results and prospects, and ensuring that the Company maintained an adequate system of financial controls such that the Company's financial reporting would be true and accurate at all times;

(e)     remain informed as to how Goodyear conducted its operations, and, upon receipt of notice or information of imprudent or unsound conditions or practices, to make reasonable inquiry in connection therewith, and to take steps to correct such conditions or practices and make such disclosures as necessary to comply with federal and state securities laws; and

(f)     ensure that the Company was operated in a diligent, honest and prudent manner in compliance with all applicable federal, state and local laws, rules and regulations.

SCANLON & GEARINGER
CO., L.P.A.
ATTORNEYS AT LAW
FIRST NATIONAL TOWER
SUITE 1100
106 S. MAIN STREET
AKRON, OHIO 44308-1463
(330) 376-4558

-11-

35.     Each Individual Defendant, by virtue of his or her position as a director and/or officer, owed to the Company and to its shareholders the fiduciary duties of loyalty, good faith and the exercise of due care and diligence in the management and administration of the affairs of the Company, as well as in the use and preservation of its property and assets. The conduct of the Individual Defendants complained of herein involves a knowing and culpable violation of their obligations as directors and officers of Goodyear, the absence of good faith on their part, and a reckless disregard for their duties to the Company and its shareholders that the Individual Defendants were aware or should have been aware posed a risk of serious injury to the Company. The conduct of the Individual Defendants who were also officers and/or directors of the Company during the Relevant Period has been ratified by the remaining Individual Defendants who collectively comprised all of Goodyear's Board during the Relevant Period.

36.     The Individual Defendants breached their duties of loyalty and good faith by allowing defendants to cause or by themselves causing the Company to misrepresent its financial results and prospects, as detailed herein *infra*, and by failing to prevent the Individual Defendants from taking such illegal actions. In addition, as a result of defendants' illegal actions and course of conduct during the Relevant Period, the Company is now the subject of several class action law suits that allege violations of federal securities laws. As a result, Goodyear has expended and will continue to expend significant sums of money. Such expenditures include, but are not limited to:

(a)     Costs incurred to carry out internal investigations, including legal fees paid to outside counsel; and

(b)     Costs incurred in investigating and defending Goodyear and certain officers in the class actions, plus potentially millions of dollars in settlements or to satisfy an adverse judgment.

37.     Moreover, these actions have irreparably damaged Goodyear's corporate image and goodwill. For at least the foreseeable future, Goodyear will suffer from what is known as the "liar's discount," a term applied to the stocks of companies who have been implicated in illegal behavior and have misled the investing public, such that Goodyear's ability to raise equity capital or debt on favorable terms in the future is now impaired.

SCANLON & GEARINGER
CO., L.P.A.
ATTORNEYS AT LAW
FIRST NATIONAL TOWER
SUITE 1100
106 S. MAIN STREET
AKRON, OHIO 44308-1463
(330) 376-4558

## CONSPIRACY, AIDING AND ABETTING, AND CONCERTED ACTION

38.     In committing the wrongful acts alleged herein, the Individual Defendants have pursued, or joined in the pursuit of, a common course of conduct, and have acted in concert with and conspired with one another in furtherance of their common plan or design.  In addition to the wrongful conduct herein alleged as giving rise to primary liability, the Individual Defendants further aided and abetted and/or assisted each other in breach of their respective duties.

39.     During all times relevant hereto, the Individual Defendants collectively and individually initiated a course of conduct that was designed to and did: (i) conceal the fact that the Company was improperly misrepresenting its financial results, in order to allow defendants to artificially inflate the price of the Company's shares; (ii) maintain the Individual Defendants' executive and directorial positions at Goodyear and the profits, power and prestige that the Individual Defendants enjoyed as a result of these positions; and  (iii) deceive the investing public, including shareholders of Goodyear, regarding the Individual Defendants' management of Goodyear's operations, the Company's financial health and stability, and future business prospects, specifically related to the Company's financials that had been misrepresented by defendants throughout the Relevant Period.  In furtherance of this plan, conspiracy and course of conduct, the Individual Defendants collectively and individually took the actions set forth herein.

40.     The Individual Defendants engaged in a conspiracy, common enterprise and/or common course of conduct commencing by at least October 1998 and continuing thereafter.  During this time the Individual Defendants caused the Company to conceal the true fact that Goodyear was misrepresenting its financial results.  In addition, defendants also made other specific, false statements about Goodyear's financial performance and future business prospects, as alleged herein.

41.     The purpose and effect of the Individual Defendants' conspiracy, common enterprise, and/or common course of conduct was, among other things, to disguise the Individual Defendants' violations of law, breaches of fiduciary duty, abuse of control, gross mismanagement, waste of corporate assets and unjust enrichment; to conceal adverse information concerning the Company's operations, financial condition and future business prospects; and to artificially inflate the price of Goodyear common stock so they could: (i) dispose of over $440,000 of their personally held stock; and (ii) protect and enhance their executive and directorial positions and the substantial

SCANLON & GEARINGER
CO., L.P.A.
ATTORNEYS AT LAW
FIRST NATIONAL TOWER
SUITE 1100
106 S. MAIN STREET
AKRON, OHIO 44308-1463
(330) 376-4558

-13-

compensation and prestige they obtained as a result thereof.

42.    The Individual Defendants accomplished their conspiracy, common enterprise and/or common course of conduct by causing the Company to purposefully, recklessly or negligently misrepresent its financial results. Because the actions described herein occurred under the authority of the Board of Directors, each of the Individual Defendants was a direct, necessary and substantial participant in the conspiracy, common enterprise and/or common course of conduct complained of herein.

43.    Each of the Individual Defendants aided and abetted and rendered substantial assistance in the wrongs complained of herein. In taking such actions to substantially assist the commission of the wrongdoing complained of herein, each Individual Defendant acted with knowledge of the primary wrongdoing, substantially assisted the accomplishment of that wrongdoing, and was aware of his or her overall contribution to and furtherance of the wrongdoing.

## IMPROPER STATEMENTS

44.    On October 13, 1998, the Individual Defendants caused the Company to issue a press release entitled "Goodyear Announces Earnings Improvement." The press release stated in part:

> The Goodyear Tire & Rubber Company reported today that its third-quarter income from continuing operations was $185 million or $1.17 per share compared with $184.8 million or $1.16 per share in the year-ago period.
>
> The earnings improvement resulted despite economic downturns in Asia and Latin America. Unit sales in the mature markets of North America and Europe increased 6.1 percent over last year's third period. Weak original equipment sales, principally in Latin America and Asia, held the overall improvement to 2.5 percent over the third quarter of 1997.

45.    On February 3, 1999, the Individual Defendants caused the Company to issue a press release entitled "Goodyear Tops '97 Net Income by 22 Percent." The press release stated in part:

> The Goodyear Tire & Rubber Company today reported fourth quarter net income of $121.5 million or 78 cents per share, versus $2 million or 1 cent per share in the year-ago period. Net income for 1998 was $682.3 million or $4.31 per share, up 22 percent over 1997 net income of $558.7 million or $3.53 per share. All per-share amounts are diluted.
>
> Goodyear's 1998 fourth quarter worldwide sales were $3.2 billion compared to $3.3 billion in 1997. Worldwide tire unit sales were up 1.8 percent over the 1997 fourth quarter. North American tire units increased 2.6 percent, and international units increased .9 percent, reflecting strong replacement market sales.

46.    On April 21, 1999, the Individual Defendants caused the Company to issue a press

SCANLON & GEARINGER
CO., L.P.A.
ATTORNEYS AT LAW
FIRST NATIONAL TOWER
SUITE 1100
106 S. MAIN STREET
AKRON, OHIO 44308-1483
(330) 376-4558

release entitled "Goodyear Reports First Quarter Results, Announces Rationalizations; Net income before rationalizations charges is 90 cents per share; $150 million in annual savings anticipated from rationalizations."  The press release stated in part:

> The Goodyear Tire & Rubber Company today reported net income before rationalization charges of $141.5 million (90 cents per share) for the first quarter of 1999. This compares to $173.6 million ($1.09 per share) in the 1998 quarter. All per-share amounts are diluted.
>
> During the 1999 quarter, Goodyear curtailed production to better align its inventories and continued to confront weak economic conditions in emerging markets around the world.
>
> Worldwide, first quarter sales were $3 billion in 1999, versus $3.1 billion in 1998. The strengthening of the U.S. dollar versus international currencies amounted to an estimated $100 million, accounting for the decline in revenues.

47.  On July 21, 1999, the Individual Defendants caused the Company to issue a press release entitled "Goodyear Reports Results for Second Quarter, First Half; Second quarter net income is 41 cents per share; Inventories reduced $145 million during first half; North American tire unit sales increase 7.9% in second quarter."  The press release stated in part:

> The Goodyear Tire & Rubber Company today reported net income of $65.7 million (41 cents per share) for the second quarter of 1999. This compares with $199 million ($1.25 per share) achieved in the second quarter of 1998. The 1999 income is within the range announced on June 24. All per-share amounts are diluted.
>
> Second quarter earnings reflect the impact of weak emerging market economies in the company's European, Latin American and Engineered Products business units. Lower levels of capacity utilization attributable to inventory reduction and manufacturing rationalization programs also impacted earnings negatively.

48.  On October 21, 1999, the Individual Defendants caused the Company to issue a press release entitled "Goodyear reports results for third quarter, nine months; Third Quarter Net Income is 61 Cents Per Share; Global Tire Unit Sales Increase 8.1% In Third Quarter; Dunlop Tire Integration Process Begins."  The press release stated in part:

> The Goodyear Tire & Rubber Company today reported net income of $97.2 million (61 cents per share) for the third quarter of 1999. This compares with $185 million ($1.17 per share) achieved in the third quarter of 1998. All per-share amounts are diluted.
>
> The results include $142.9 million of after-tax gains on the sale of assets, net rationalization charges of $15.7 million after tax and operating charges, primarily inventory write-offs, of $100.4 million after tax.
>
> Third quarter earnings reflect under-performance in the company's North American Tire business, including an inability to address stronger-than-anticipated demand in North America; the impact of integrating the Dunlop tire businesses in

SCANLON & GEARINGER
CO., L.P.A.
ATTORNEYS AT LAW
FIRST NATIONAL TOWER
SUITE 1100
106 S. MAIN STREET
AKRON, OHIO 44308-1463
(330) 376-4558

North America and Europe; and on-going weak economic conditions in Latin America.

49.     On February 9, 2000, the Individual Defendants caused the Company to issue a press release entitled "Goodyear Reports Results for Fourth Quarter, 1999; Global tire unit sales up 13.2% in fourth quarter; Fourth quarter income before rationalizations is 30 cents per share; significant improvement seen for 2000." The press release stated in part:

> The Goodyear Tire & Rubber Company today reported net income of $40.8 million (26 cents per share) for the fourth quarter of 1999. This compares with $121.5 million (78 cents per share) achieved in the fourth quarter of 1998. All per share amounts are diluted.
>
> Fourth quarter 1999 results include $7.7 million ($6.8 million after tax, 4 cents per share) in net rationalization charges. Excluding the impact of restructuring, fourth quarter 1999 income was $47.6 million (30 cents per share).
>
> The 1998 fourth quarter included gains from the sale of assets of $6.5 million after tax (4 cents per share). Before these gains, fourth quarter 1998 income was $115 million (74 cents per share).

50.     On April 12, 2000, the Individual Defendants caused the Company to issue a press release entitled "Goodyear Reports Results for 2000's First Quarter; Sales Increase 18%; Net Income Exceeds Expectations." The press release stated in part:

> The Goodyear Tire & Rubber Company today reported net income of $63.6 million (40 cents per share) for the first quarter of 2000, reflecting improved performance in North American Tire, Latin America Tire and the global Engineered Products business units. All per-share amounts are diluted.
>
> "First quarter earnings reflect the benefits of 20 percent unit volume growth, Dunlop joint venture synergies and global manufacturing rationalization as shown in the turnaround performance of the company's North America, Latin America and Engineered Products business units," said Samir G. Gibara, chairman, chief executive officer and president. First quarter earnings exceeded the First Call consensus of 35 cents per share.

51.     On July 24, 2000, the Individual Defendants caused the Company to issue a press release entitled "Goodyear Reports Results for Second Quarter, First Half; Earnings before rationalizations are 41 cents per share, up 11% from 1999; Global tire unit volume up 20%; Global sales up 14%." The press release stated in part:

> The Goodyear Tire & Rubber Company today reported net income of $59.7 million (38 cents per share) for the second quarter of 2000. This compares with $65.7 million (41 cents per share) in the second quarter of 1999.
>
> Earnings before net rationalization charges were 41 cents per share ($64.9 million) for the second quarter of 2000. Earnings before rationalization charge reversals were 37 cents per share ($59.7 million) for the 1999 quarter. All per-share

SCANLON & GEARINGER
Co., L.P.A.
ATTORNEYS AT LAW
FIRST NATIONAL TOWER
SUITE 1100
106 S. MAIN STREET
AKRON, OHIO 44308-1463
(330) 376-4558

amounts are diluted.

"Second quarter 2000 earnings reflect the positive impact of the company's Dunlop tire operations, cost containment initiatives and improved manufacturing efficiency, offset by higher raw material costs and increasingly competitive market conditions around the world," said Samir G. Gibara, chairman, chief executive officer and president. "These results were further impacted by currency movements, particularly in continental Europe and the United Kingdom."

52.    On October 24, 2000, the Individual Defendants caused the Company to issue a press release entitled "Goodyear Reports Results for Third Quarter, Nine Months; Global Tire Unit Volume Up 8.7% In Third Quarter; High Raw Material, Energy Costs Impact Results; Goodyear Consumer Tire Growth Outpaces Industry in North America." The press release stated in part:

The Goodyear Tire & Rubber Company today reported a net loss of $6.6 million (4 cents per share) for the third quarter of 2000. Net income in the third quarter of 1999 was $109.1 million (69 cents per share).

The 2000 results include after-tax rationalization charges of $1.2 million (1 cent per share) related to closing a manufacturing facility in Italy and a gain of $3.2 million (2 cents per share) resulting from a property sale in Mexico. Last year's results include various adjustments, most notably an after-tax gain of $143.7 million (90 cents per share) resulting from the completion of the company's Dunlop joint ventures in September 1999. All per share amounts are diluted.

53.    On February 14, 2001, the Individual Defendants caused the Company to issue a press release entitled "Goodyear Reports Record Sales for 2000; Global tire volume up 11.4% for year; Global rationalization, cost-cutting initiatives announced; Fourth quarter loss from operations is 11 cents per share." The press release stated in part:

The Goodyear Tire & Rubber Company today reported its 2000 annual sales were a record $14.4 billion and announced plans to improve its profitability during 2001.

Excluding rationalization charges and the impact of changing inventory costing methods in the United States from last-in-first-out (LIFO) to first-in-first-out (FIFO), Goodyear posted a loss from operations of $16.5 million (11 cents per share) in 2000's fourth quarter versus income of $47.6 million (29 cents per share) in the 1999 period.

The company reported a net loss of $102 million (65 cents per share) for the fourth quarter of 2000. Net income in the fourth quarter of 1999 was $37 million (23 cents per share). All per share amounts are diluted. All prior periods have been restated to reflect the change in inventory costing method.

54.    On April 24, 2001, the Individual Defendants caused the Company to issue a press release entitled "Goodyear Reports Results for 2001's First Quarter; Market share gains achieved in North America; Loss from operations is $3.5 million, 2 cents per share." The press release stated in part:

SCANLON & GEARINGER
Co., L.P.A.
ATTORNEYS AT LAW
FIRST NATIONAL TOWER
SUITE 1100
106 S. MAIN STREET
AKRON, OHIO 44308-1468
(330) 376-4558

-17-

Despite a significant reduction in orders from North American vehicle manufacturers and an abrupt slowdown in the region's replacement tire market, The Goodyear Tire & Rubber Company today reported results for the first quarter of 2001 that reflect improved operating performance over the previous quarter.

Excluding after-tax rationalization charges of $57.1 million and an after-tax gain of $13.9 million resulting from the sale of land and buildings in the United Kingdom, Goodyear posted an after-tax loss from operations of $3.5 million (2 cents per share) in 2001's first quarter. The company estimates the economic impact of foreign currency movements reduced the quarter's operating income by about $20 million.

55.     On July 23, 2001, the Individual Defendants caused the Company to issue a press release entitled "Goodyear Reports Results for 2001's Second Quarter; Net income of $7.8 million, 5 cents per share; Continued market share gains in North America." The press release stated in part:

The Goodyear Tire & Rubber Company today reported net income of $7.8 million (5 cents per share) for the second quarter of 2001. This compares with net income of $77.1 million (49 cents per share) in the second quarter of 2000 and a net loss of $46.7 million (30 cents per share) for the first quarter of 2001. All per-share amounts are diluted.

During the 2000 second quarter, the company recorded net after-tax rationalization charges of $5.2 million. No rationalization charges were recorded in the second quarter of 2001.

"The ongoing slowdown in the auto and commercial truck industries around the globe have led to a significant reduction in orders and a corresponding effort to adjust production and inventory levels in our tire, engineered products and chemicals businesses. More production curtailments will be needed in the third quarter until demand improves," said Samir G. Gibara, chairman and chief executive officer.

56.     On October 25, 2001, the Individual Defendants caused the Company to issue a press release entitled "Goodyear reports results for 2001's third quarter; Net income of $9.3 million, 6 cents per share; Sales, units and market share gains in North America." The press release stated in part:

The Goodyear Tire & Rubber Company today reported net income of $9.3 million (6 cents per share) for the third quarter of 2001. Net income in the third quarter of 2000 was $17 million (11 cents per share), which included a net after-tax gain of $2 million (1 cent per share). All per share amounts are diluted.

The company estimates that the negative effect of currency movements reduced operating income by approximately $20 million in 2001's third quarter.

Third quarter results reflect continued weak economic conditions and market deterioration in much of the world and an abrupt decline in sales in September.

57.     On February 8, 2002, the Individual Defendants caused the Company to issue a press release entitled "Goodyear reports results for 2001's fourth quarter; Net loss is $1.07 per share for

SCANLON & GEARINGER
Co., L.P.A.
ATTORNEYS AT LAW
FIRST NATIONAL TOWER
SUITE 1100
106 S. MAIN STREET
AKRON, OHIO 44308-1463
(330) 376-4558

-18-

fourth quarter; 2001 positive cash flow of $724 million; Global rationalization initiatives to eliminate

high-cost tire capacity." The press release stated in part:

> The Goodyear Tire & Rubber Company today reported a net loss of $174.0 million ($1.07 per share) for the fourth quarter of 2001. This compares with a net loss of $102.0 million (65 cents per share) in the fourth quarter of 2000.
>
> The fourth quarter 2001 results include after-tax rationalization charges and other adjustments totaling $126.9 million (78 cents per share). Excluding these adjustments, Goodyear posted a loss of $47.1 million (29 cents per share) for the period.
>
> The after-tax adjustments recorded in the fourth quarter of 2001 include a gain of $16.9 million (10 cents per share) on the sale of its specialty chemicals business, rationalization charges of $101.2 million (62 cents per share) and a charge of $18.6 million (11 cents per share) against Cost of Goods Sold for a tire replacement program. Equity in Earnings of Affiliates includes a charge of $24.0 million (15 cents per share) for a rationalization program at the company's South Pacific Tyres joint venture in Australia.

58.     On April 24, 2002, the Individual Defendants caused the Company to issue a press

release entitled "Goodyear Reports Results for 2002's First Quarter." The press release stated in part:

> First quarter 2002 results include a pre-tax charge of $10 million (4 cents per share) principally related to the return of inventory to Goodyear following the April 6, 2002, closure of Penske Automotive Centers in the United States.
>
> The 2002 first quarter was also adversely affected by approximately $95 million in costs resulting from significant production cutbacks in the fourth quarter of 2001 due to inventory reduction programs and lower demand during that period.

59.     On July 23, 2002, the Individual Defendants caused the Company to issue a press

release entitled "Goodyear reports results for 2002's second quarter; Net income more than triples

to $28.9 million, 18 cents per share; Most profitable quarter in two years." The press release stated

in part:

> The Goodyear Tire & Rubber Company today reported net income of $28.9 million (18 cents per share) for the second quarter of 2002. Net income in the second quarter of 2001 was $7.8 million (5 cents per share). All per share amounts are diluted.
>
> Worldwide, Goodyear's second quarter sales were $3.5 billion in 2002, versus $3.6 billion in 2001. Tire unit volume in 2002's second quarter was 53.3 million units, down 4 percent from last year.
>
> "Our earnings more than tripled despite volatile and difficult economic and market conditions in much of the world," said Sam G. Gibara, chairman and chief executive officer. "Cost reduction programs and rationalization activities are paying off. We are also benefitting from lower raw material costs. While we still face challenges, this was our best earnings performance since the second quarter of 2000," he said.
>
> The Goodyear Tire & Rubber Company today reported a net loss of $63.2

SCANLON & GEARINGER
CO., L.P.A.
ATTORNEYS AT LAW
FIRST NATIONAL TOWER
SUITE 1100
106 S. MAIN STREET
AKRON, OHIO 44308-1463
(330) 376-4558

-19-

million (39 cents per share) for the first quarter of 2002. This compares with a net loss of $46.7 million (30 cents per share) in the first quarter of 2001.

60.    On October 30, 2002, the Individual Defendants caused the Company to issue a press release entitled "Goodyear Reports Results for 2002's Third Quarter; Net income more than triples to $33.7 million, 20 cents per share; Earnings, margins improve in 6 of 7 businesses." The press release stated in part:

The Goodyear Tire & Rubber Company today reported net income of $33.7 million (20 cents per share) for the third quarter of 2002. Net income in the third quarter of 2001 was $9.3 million (6 cents per share). All per share amounts are diluted.

Worldwide, Goodyear's third quarter sales were $3.5 billion in 2002, versus $3.7 billion in 2001. Tire unit volume in 2002's third quarter was 54.4 million units, down 4 percent from last year.

The company estimates that the effects of currency movements negatively impacted worldwide sales by approximately $4 million and earnings by $10 million in the third quarter of 2002.

61.    On April 3, 2003, the Individual Defendants caused the Company to issue a press release entitled "Goodyear Reports Results for 2002's Fourth Quarter; Net loss per share, including $6.17 non-cash charge, is $6.30 for the fourth quarter; International units show continuing improvement." The press release stated in part:

The Goodyear Tire & Rubber Company today reported a net loss of $1.1 billion ($6.30 per share) for the fourth quarter of 2002, compared with a net loss of $174.0 million ($1.07 per share) in the fourth quarter of 2001. All per share amounts are diluted.

The quarter's results reflect continuing improvement in the company's international tire business as well as its Engineered Products operation. Business conditions, and results, in North America remain weak.

"The turnaround in six of our seven businesses continued in the fourth quarter," said Robert J. Keegan, Goodyear president and chief executive officer. "All four of our international tire businesses achieved a higher profit margin compared to a year ago, with margins more than doubling in three of those businesses. Our 2002 results, especially in our North American Tire business, are extremely disappointing."

62.    On April 30, 2003, the Individual Defendants caused the Company to issue a press release entitled "Goodyear Reports Results for 2003's First Quarter; Sales increase 7.1 percent from first quarter 2002; Operating results and margins improve in six businesses." The press release stated in part:

The Goodyear Tire & Rubber Company today reported a net loss of $163.3 million (93 cents per share) for the first quarter of 2003, compared with a net loss of $63.2 million (39 cents per share) in the first quarter of 2002. All per share amounts are

SCANLON & GEARINGER
Co., L.P.A.
ATTORNEYS AT LAW
FIRST NATIONAL TOWER
SUITE 1100
106 S. MAIN STREET
AKRON, OHIO 44308-1463
(330) 376-4558

diluted.

Six of the company's seven businesses continued to perform well during the quarter, posting year-over-year improvement in segment operating income and profit margin. However, these results were not enough to fully offset a loss in the company's North American Tire business, charges related to rationalization activities and an increased tax burden.

First quarter total segment operating income was $68.0 million, more than double the $32.9 million achieved in the 2002 period. First quarter loss before income taxes was $135.0 million, compared to a loss of $85.6 million in the prior-year period. See the note at the end of this release for further explanation and a reconciliation table.

63.     On July 30, 2003, the Individual Defendants caused the Company to issue a press release entitled "Goodyear Reports Results for 2003's Second Quarter; Sales increase 8 percent from second quarter 2002; Segment operating income improves in six businesses."  The press release stated in part:

The Goodyear Tire & Rubber Company today reported a net loss of $73.6 million (42 cents per share) for the second quarter of 2003, compared with net income of $28.9 million (18 cents per share) in the second quarter of 2002. All per share amounts are diluted.

The company reported second quarter sales of $3.8 billion for 2003, up 8 percent from $3.5 billion during the prior-year period. Tire unit volume in the second quarter of 2003 was 52.8 million units, compared to 53.3 million units in the 2002 period.

We are disappointed in our financial results for the second quarter, but we are encouraged by the numerous positive trends in our company and we are optimistic about our turnaround," said Robert J. Keegan, Goodyear chairman and chief executive officer.

64.     Ultimately, on October 22, 2003, Goodyear announced that its 1998-2002 results would be restated to eliminate revenue that had been improperly recorded as revenues:

The Goodyear Tire & Rubber Company today announced that it will restate its financial results for the years 1998-2002 and for the first and second quarters of 2003 to record adjustments primarily resulting from the implementation of an enterprise resource planning accounting system (ERP) in 1999 and errors in inter-company billing systems. These adjustments, which are being identified and corrected by Goodyear, do not affect the company's net cash position, and the restatement will not affect its access to credit facilities.

Although the company is still reviewing the matter, the adjustments are currently expected to decrease net income over the restatement period by up to $100 million.... A reduction is anticipated in shareholders' equity as of June 30, 2003, of up to $120 million, of which $20 million relates to periods prior to 1998.

\* \* \*

Goodyear detected the errors in the course of a review of various accounts,

SCANLON & GEARINGER
Co., L.P.A.
ATTORNEYS AT LAW
FIRST NATIONAL TOWER
SUITE 1100
106 S. MAIN STREET
AKRON, OHIO 44308-1463
(330) 376-4558

including ERP-impacted balance sheet accounts. These accounts were principally within the company's North American Tire and Engineered Products businesses. The restatement will also include adjustments for timing differences in other areas of the company's business.

The company's decision to restate prior-period financial statements was made by Goodyear management with the concurrence of its Audit Committee and its independent auditors, PricewaterhouseCoopers LLP.

Due to the timing of this restatement process, the company today is providing estimated results for the third quarter of 2003 rather than the detailed announcement, which had been scheduled for October 23. The investor conference call scheduled for that day has been cancelled. Goodyear intends to announce its full third quarter results and file the amended 2002 Annual Report on Form 10-K and 2003 first and second quarter reports on Form 10-Q by mid-November.

Goodyear said it expects to report a net loss for the third quarter of 2003 in the range of $90 million to $115 million (51 cents to 66 cents per share).

* * *

The net loss will include net rationalization charges of approximately $56 million before tax (27 cents per share) related to a plant closing and employment reductions in North America and Europe. These programs will result in employment reductions totaling about 1,360 and approximate annualized cost savings of $65 million.

### THE COMPANY IS ALREADY DAMAGED

65.     On October 23, 2003, Reuters News Service reported a news story entitled "Goodyear restatement seen hurting credibility." The story stated in relevant part:

Goodyear Tire & Rubber Co., which said it would restate years of financial results, has damaged its credibility and may have put at risk a key part of a contract with its biggest union, analysts said on Thursday.

In a surprise announcement late Wednesday, the nation's largest tiremaker said it overstated results by as much as $100 million from 1998 through the second quarter of 2003.

Goodyear, whose shares tumbled as much as 11 percent on Thursday, already has been struggling with huge losses and marketing problems.

"One of the most serious implications of (the)...announcement is the blow it deals to Goodyear's already fragile credibility with investors," wrote Merrill Lynch analyst Jacqueline Weiss in a research note.

Most importantly, it could hurt the company's ability to sell $325 million of debt and equity by year end, analysts warned. That is required as part of a new contract with its largest union, the United Steelworkers of America (News - Websites).

"We believe (the)...announcement will delay such an offering and will make it far more difficult for the company to accomplish one by the end of 2003," added Weiss, who has a "neutral" rating on the company.

SCANLON & GEARINGER
Co., L.P.A.
ATTORNEYS AT LAW
FIRST NATIONAL TOWER
SUITE 1100
106 S. MAIN STREET
AKRON, OHIO 44308-1463
(330) 376-4558

A spokesman for Goodyear, which has lost $1.3 billion in the past two years, declined to comment specifically on a debt or equity sale but said it intends to meet the requirements of its contract.

The union agreement calls for the company to sell $250 million of debt plus $75 million of equity, or a security that is linked to both debt and equity, by Dec. 31.

If the Goodyear doesn't meet that requirement, the Steelworkers would have the right to strike. The union couldn't be reached for comment.

Scott Lee, a debt analyst with Fitch Ratings (News) Inc., agreed that selling any debt or equity will be more difficult as a result.

"In this environment of heightened scrutiny of accounting numbers, it's just bad," he said. "It does nothing to help the believability of their story...When they turn around and have to sell their story to people in the credit markets, I think you'll have a lot of deaf ears."

\* \* \*

Merrill Lynch's Weiss increased her loss estimate to 34 cents from 9 cents.

## IMPROPER FINANCIAL REPORTING DURING THE RELEVANT PERIOD

66. In order to inflate the price of Goodyear's stock and make its issuance of shares possible, the Individual Defendants caused the Company to falsely report its results for 1998-2002 through improper accounting practices. The Company subsequently restated these financial results.

67. Goodyear has now admitted that it inappropriately recorded transactions included in its results, and has restated those results to remove some $100 million in improperly reported income, such that its 1998-2002 financial statements were not a fair presentation of Goodyear's results and were presented in violation of Generally Accepted Accounting Principles ("GAAP") and SEC rules.

68. GAAP are those principles recognized by the accounting profession as the conventions, rules and procedures necessary to define accepted accounting practice at a particular time. SEC Regulation S-X (17 C.F.R. §210.4-01(a)(1)) states that financial statements filed with the SEC which are not prepared in compliance with GAAP are presumed to be misleading and inaccurate, despite footnote or other disclosure. Regulation S-X requires that interim financial statements must also comply with GAAP, with the exception that interim financial statements need not include disclosure which would be duplicative of disclosures accompanying annual financial statements. 17 C.F.R. §210.10-01(a).

69. In Goodyear's 2001 Form 10-K, it represented that it recognized revenue in

SCANLON & GEARINGER
Co., L.P.A.
ATTORNEYS AT LAW
FIRST NATIONAL TOWER
SUITE 1100
106 S. MAIN STREET
AKRON, OHIO 44308-1463
(330) 376-4558

accordance with GAAP.

70.     The fact that Goodyear is going to restate its financial statements for 1998-2002 is an admission that the financial statements originally issued were false and that the overstatement of revenues and income was material.  Pursuant to GAAP, as set forth in Accounting Principles Board Opinion ("APB") No. 20, the type of restatement announced by Goodyear was to correct for material errors in its previously issued financial statements.  *See* APB No. 20, ¶¶7-13.  The restatement of past financial statements is a disfavored method of recognizing an accounting change as it dilutes confidence by investors in the financial statements, it makes it difficult to compare financial statements and it is often difficult, if not impossible, to generate the numbers when restatement occurs.  *See* APB No. 20, ¶14.  Thus, GAAP provides that financial statements should only be restated in limited circumstances, *i.e.*, when there is a change in the reporting entity, there is a change in accounting principles used or to correct an error in previously issued financial statements.  Goodyear's restatement was not due to a change in reporting entity or a change in accounting principle, but rather to errors in previously issued financial statements.  Thus, the restatement is an admission by Goodyear that its previously issued financial results and its public statements regarding those results were false.

71.     Due to these accounting improprieties, the Company presented its financial results and statements in a manner which violated GAAP, including the following fundamental accounting principles:

(a)     The principle that interim financial reporting should be based upon the same accounting principles and practices used to prepare annual financial statements was violated (APB No. 28, ¶10);

(b)     The principle that financial reporting should provide information that is useful to present and potential investors and creditors and other users in making rational investment, credit and similar decisions was violated (FASB Statement of Concepts No. 1, ¶34);

(c)     The principle that financial reporting should provide information about the economic resources of an enterprise, the claims to those resources, and effects of transactions, events and circumstances that change resources and claims to those resources was violated (FASB Statement of Concepts No. 1, ¶40);

SCANLON & GEARINGER
CO., L.P.A.
ATTORNEYS AT LAW
FIRST NATIONAL TOWER
SUITE 1100
106 S. MAIN STREET
AKRON, OHIO 44308-1463
(330) 376-4558

(d)     The principle that financial reporting should provide information about how management of an enterprise has discharged its stewardship responsibility to owners (stockholders) for the use of enterprise resources entrusted to it was violated. To the extent that management offers securities of the enterprise to the public, it voluntarily accepts wider responsibilities for accountability to prospective investors and to the public in general (FASB Statement of Concepts No. 1, ¶50);

(e)     The principle that financial reporting should provide information about an enterprise's financial performance during a period was violated. Investors and creditors often use information about the past to help in assessing the prospects of an enterprise. Thus, although investment and credit decisions reflect investors' expectations about future enterprise performance, those expectations are commonly based at least partly on evaluations of past enterprise performance (FASB Statement of Concepts No. 1, ¶42);

(f)     The principle that financial reporting should be reliable in that it represents what it purports to represent was violated. That information should be reliable as well as relevant is a notion that is central to accounting (FASB Statement of Concepts No. 2, ¶¶58-59);

(g)     The principle of completeness, which means that nothing is left out of the information that may be necessary to insure that it validly represents underlying events and conditions was violated (FASB Statement of Concepts No. 2, ¶79); and

(h)     The principle that conservatism be used as a prudent reaction to uncertainty to try to ensure that uncertainties and risks inherent in business situations are adequately considered was violated. The best way to avoid injury to investors is to try to ensure that what is reported represents what it purports to represent (FASB Statement of Concepts No. 2, ¶¶95, 97).

72.     Further, the undisclosed adverse information concealed by the Individual Defendants during Relevant Period is the type of information which, because of SEC regulations, regulations of the national stock exchanges and customary business practice, is expected by investors and securities analysts to be disclosed and is known by corporate officials and their legal and financial advisors to be the type of information which is expected to be and must be disclosed.

73.     As a result of the Individual Defendants actions, Goodyear's market capitalization has been damaged by over $10 billion. At the same time that the Individual Defendants were causing

SCANLON & GEARINGER
Co., L.P.A.
ATTORNEYS AT LAW
FIRST NATIONAL TOWER
SUITE 1100
106 S. MAIN STREET
AKRON, OHIO 44308-1463
(330) 376-4558

Goodyear to suffer such devastation of its market capitalization, the Insider Selling Defendant fared much better by selling over $400,000 of his personally held stock.

## DERIVATIVE AND DEMAND FUTILITY ALLEGATIONS

74.     Plaintiff brings this action derivatively in the right and for the benefit of Goodyear to redress injuries suffered, and to be suffered, by Goodyear as a direct result of the breaches of fiduciary duty, abuse of control, gross mismanagement, waste of corporate assets, and unjust enrichment, as well as the aiding and abetting thereof, by the Individual Defendants.  Goodyear is named as a nominal defendant solely in a derivative capacity.  This is not a collusive action to confer jurisdiction on this Court that it would not otherwise have.

75.     Plaintiff will adequately and fairly represent the interests of Goodyear in enforcing and prosecuting its rights.

76.     Plaintiff is and was an owner of the stock of Goodyear during times relevant to the Individual Defendants' wrongful course of conduct alleged herein, and remains a shareholder of the Company.

77.     The current Board of Directors of Goodyear consists of the following individuals: defendants Gibara, Keegan, Minter, Pytte, Breen, Hudson, Boland, Zimmerman, Arnold and Forsee. Plaintiff has not made any demand on the present Board of Directors of Goodyear to institute this action because such a demand would be a futile, wasteful and useless act, particularly for the following reasons:

(a)     As a result of their access to and review of internal corporate documents; conversations and connections with other corporate officers, employees and directors; and attendance at   management and   Board meetings, each of the defendants knew the adverse non-public information regarding the improper accounting.  While in possession of this material adverse non-public information regarding the Company, the following current members of the Goodyear Board participated in the illegal insider selling:

(i)     During the Relevant Period, Gibara sold 7,200 shares of Goodyear stock for proceeds of over $400,000.  Because this defendant received a personal financial benefit from the challenged insider trading transactions, this defendant is interested and any demand upon him is futile;

SCANLON & GEARINGER
Co., L.P.A.
ATTORNEYS AT LAW
FIRST NATIONAL TOWER
SUITE 1100
106 S. MAIN STREET
AKRON, OHIO 44308-1463
(330) 376-4558

(b)      The Compensation Committee of the Board determines The Compensation Committee, after consulting with the CEO, establishes, authorizes and administers Goodyear's compensation policies, practices and plans for Goodyear's directors, executive officers and other key personnel. The Compensation Committee is comprised of defendants Boland, Breen, Forsee, Hudson, Pytte, Walker and Zimmerman.  As the members of the Compensation Committee singularly control the other defendants' awards, the remaining members of the Board will not institute this action against defendants Boland, Breen, Forsee, Hudson, Pytte, Walker and Zimmerman. To do so would jeopardize each defendant's personal financial compensation. Thus, demand on defendants Gibara, Keegan, Minter and Arnold is futile;

(c)      The principal professional occupation of defendant Keegan is his employment with Goodyear, pursuant to which he received and continues to receive substantial monetary compensations and other benefits.  Specifically, for FY:02, FY:01, and FY:00, Goodyear paid defendant Keegan $853,350, $1,480,177 and $1,500,500, respectively, in salary, bonus and other compensation, and granted him 140,000, 90,000 and 330,000 options to purchase Goodyear stock, respectively. Accordingly, defendant Keegan lacks independence from defendants Boland, Breen, Forsee, Hudson, Pytte, Walker and Zimmerman, who exert influence over defendant Keegan's compensation by virtue of their position as members Compensation Committee.  This lack of independence renders defendant Keegan incapable of impartially considering a demand to commence and vigorously prosecute this action;

(d)      According to Goodyear's Proxy Statements filed with the SEC, the defendants Boland, Breen, Fogarty, Forsee, Walker, Butler, Cruikshank, Laskawy, Farley, Schofield and Hudson served on the Audit Committee during the Relevant Period.  The Audit Committee is responsible for reviewing the activities of Goodyear's internal auditors and independent accountants. The Audit Committee evaluates Goodyear's organization and its internal controls, policies, procedures and practices to determine whether they are reasonably designed to: provide for the safekeeping of Goodyear's assets; assure the accuracy and adequacy of Goodyear's records and financial statements; reviews Goodyear's financial statements and reports; monitors compliance with Goodyear's internal controls, policies, procedures and practices; and receives direct compliance reports from Goodyear's internal auditors and General Counsel and from the independent accountants. Nonetheless, the Audit

SCANLON & GEARINGER
CO., L.P.A.
ATTORNEYS AT LAW
FIRST NATIONAL TOWER
SUITE 1100
106 S. MAIN STREET
AKRON, OHIO 44308-1403
(330) 376-4558

-27-

Committee recommended that the Board of Directors include the improper audited consolidated financial statements in Goodyear's Annual Report on Form 10-K for the years ended December 31, 1998-2002, as filed with the SEC. By such actions, these defendants breached their duties by causing or allowing the improper financials described above. As a result of these defendants' breach of their duties, any demand upon them is futile;

(e)     The entire Goodyear Board of Directors and senior management participated in the wrongs complained of herein. Goodyear's directors are not disinterested or independent due to the following: defendants Gibara, Keegan, Minter, Pytte, Breen, Hudson, Boland, Zimmerman, Arnold and Forsee served on the Goodyear Board during the Relevant Period. Pursuant to their specific duties as Board members, each was charged with the management of the Company and to conduct its business affairs. Each of the above-referenced defendants breached the fiduciary duties that they owed to Goodyear and its shareholders in that they failed to prevent and correct the improper financials. Thus, the Goodyear Board cannot exercise independent objective judgment in deciding whether to bring this action or whether to vigorously prosecute this action because its members are interested personally in the outcome as it is their actions that have subjected Goodyear to millions of dollars in liability for possible violations of applicable securities laws;

(f)     The Individual Defendants, because of their inter-related business, professional and personal relationships, have developed debilitating conflicts of interest that prevent the Board members of the Company from taking the necessary and proper action on behalf of the Company as requested herein. In addition to the conflicts that exist as a result of their participation in the improper accounting and insider selling, as detailed herein *supra*, the majority of the Board, including the defendants listed below, are subject to the following prejudicial entanglements:

(g)     The defendant directors of Goodyear, as more fully detailed herein, participated in, approved and/or permitted the wrongs alleged herein to have occurred and participated in efforts to conceal or disguise those wrongs from Goodyear's stockholders or recklessly and/or negligently disregarded the wrongs complained of herein, and are therefore not disinterested parties;

(h)     In order to bring this suit, all of the directors of Goodyear would be forced to sue themselves and persons with whom they have extensive business and personal entanglements,

SCANLON & GEARINGER
Co., L.P.A.
ATTORNEYS AT LAW
FIRST NATIONAL TOWER
SUITE 1100
106 S. MAIN STREET
AKRON, OHIO 44308-1463
(330) 376-4558

which they will not do, thereby excusing demand;

(i)     The acts complained of constitute violations of the fiduciary duties owed by Goodyear's officers and directors and these acts are incapable of ratification;

(j)     Each of the defendant directors of Goodyear authorized and/or permitted the false statements disseminated directly to the public or made directly to securities analysts and which were made available and distributed to shareholders, authorized and/or permitted the issuance of various of the false and misleading statements and are principal beneficiaries of the wrongdoing alleged herein, and thus could not fairly and fully prosecute such a suit even if such suit was instituted by them;

(k)     Any suit by the current directors of Goodyear to remedy these wrongs would likely expose the Individual Defendants and Goodyear to further violations of the securities laws that would result in civil actions being filed against one or more of the Individual Defendants, thus, they are hopelessly conflicted in making any supposedly independent determination whether to sue themselves;

(l)     Goodyear has been and will continue to be exposed to significant losses due to the wrongdoing complained of herein, yet the Individual Defendants and current Board have not filed any lawsuits against themselves or others who were responsible for that wrongful conduct to attempt to recover for Goodyear any part of the damages Goodyear suffered and will suffer thereby;

(m)     If the current directors were to bring this derivative action against themselves, they would thereby expose their own misconduct, which underlies allegations against them contained in class action complaints for violations of securities law, which admissions would impair their defense of the class actions and greatly increase the probability of their personal liability in the class actions, in an amount likely to be in excess of any insurance coverage available to the Individual Defendants. In essence, they would be forced to take positions contrary to the defenses they will likely assert in the securities class actions. This they will not do. Thus, demand is futile; and

(n)     If Goodyear's current and past officers and directors are protected against personal liability for their acts of mismanagement, abuse of control and breach of fiduciary duty alleged in this Complaint by directors' and officers' liability insurance, they caused the Company to purchase that insurance for their protection with corporate funds, *i.e.*, monies belonging to the

SCANLON & GEARINGER
CO., L.P.A.
ATTORNEYS AT LAW
FIRST NATIONAL TOWER
SUITE 1100
106 S. MAIN STREET
AKRON, OHIO 44308-1463
(330) 376-4558

-29-

stockholders of Goodyear. However, due to certain changes in the language of directors' and officers' liability insurance policies in the past few years, the directors' and officers' liability insurance policies covering the defendants in this case contain provisions that eliminate coverage for any action brought directly by Goodyear against these defendants, known as, *inter alia*, the "insured versus insured exclusion." As a result, if these directors were to sue themselves or certain of the officers of Goodyear, there would be no directors' and officers' insurance protection and thus, this is a further reason why they will not bring such a suit. On the other hand, if the suit is brought derivatively, as this action is brought, such insurance coverage exists and will provide a basis for the Company to effectuate recovery. If there is no directors' and officers' liability insurance at all then the current directors will not cause Goodyear to sue them, since they will face a large uninsured liability.

78.     Moreover, despite the Individual Defendants having knowledge of the claims and causes of action raised by plaintiff, the current Board of Directors has failed and refused to seek to recover for Goodyear for any of the wrongdoing alleged by plaintiff herein.

79.     Plaintiff has not made any demand on shareholders of Goodyear to institute this action since such demand would be a futile and useless act for the following reasons:

(a)     Goodyear is a publicly held company with approximately 175 million shares outstanding, and thousands of shareholders;

(b)     Making demand on such a number of shareholders would be impossible for plaintiff who has no way of finding out the names, addresses or phone numbers of shareholders; and

(c)     Making demand on all shareholders would force plaintiff to incur huge expenses, assuming all shareholders could be individually identified.

## COUNT I

### Against Defendants Gibara, Keegan and Tieken for
### Violations of Sarbanes-Oxley Act of 2002

80.     Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

81.     Pursuant to the Sarbanes-Oxley Act of 2002 §304, because Goodyear will be required to prepare an accounting restatement for fiscal years 1998-2002 due to material noncompliance with

SCANLON & GEARINGER
Co., L.P.A.
ATTORNEYS AT LAW
FIRST NATIONAL TOWER
SUITE 1100
106 S. MAIN STREET
AKRON, OHIO 44308-1463
(330) 376-4558

GAAP, as a result false and misleading financial statements, defendants Gibara, and Keegan, as Goodyear's CEOs and Defendant Tieken, as Goodyear's CFO, are required to reimburse Goodyear for all bonuses or other incentive-based or equity-based compensation, received by them from Goodyear from 1998-2002, as identified herein.

82.     Defendants Gibara, Keegan and Tieken are also liable to Plaintiff for reasonable costs and attorneys' fee in the prosecution of this derivative action on behalf of Goodyear.

## COUNT II

### Against the Insider Selling Defendant for Breach of Fiduciary Duties for Insider Selling and Misappropriation of Information

83.     Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

84.     At the time of the stock sales set forth herein, the Insider Selling Defendant knew the information described above, and sold Goodyear common stock on the basis of such information.

85.     The information described above was proprietary non-public information concerning the Company's financial condition and future business prospects.  It was a proprietary asset belonging to the Company, which the Insider Selling Defendant used for his own benefit when he sold Goodyear common stock.

86.     At the time of his stock sales, the Insider Selling Defendant knew that the Company's revenues were materially overstated.  The Insider Selling Defendant's sales of Goodyear common stock while in possession and control of this material adverse non-public information was a breach of his fiduciary duties of loyalty and good faith.

87.     Since the use of the Company's proprietary information for his own gain constitutes a breach of the Insider Selling Defendant's fiduciary duties, the Company is entitled to the imposition of a constructive trust on any profits the Insider Selling Defendant obtained thereby.

## COUNT III

### Against All Defendants for Breach of Fiduciary Duty

88.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

89.     The Individual Defendants owed and owe Goodyear fiduciary obligations. By reason

SCANLON & GEARINGER
Co., L.P.A.
ATTORNEYS AT LAW
FIRST NATIONAL TOWER
SUITE 1100
106 S. MAIN STREET
AKRON, OHIO 44308-1465
(330) 376-4558

of their fiduciary relationships, the Officer Defendants and Director Defendants owed and owe Goodyear the highest obligation of good faith, fair dealing, loyalty and due care.

90. The Individual Defendants, and each of them, violated and breached their fiduciary duties of care, loyalty, reasonable inquiry, oversight, good faith and supervision.

91. Each of the Individual Defendants had actual or constructive knowledge that they had caused the Company to improperly misrepresent the financial results of the Company and failed to correct the Company's publicly reported financial results and guidance. These actions could not have been a good faith exercise of prudent business judgment to protect and promote the Company's corporate interests.

92. As a direct and proximate result of the Individual Defendants' failure to perform their fiduciary obligations, Goodyear has sustained significant damages. As a result of the misconduct alleged herein, the Individual Defendants are liable to the Company.

93. Plaintiff on behalf of Goodyear has no adequate remedy at law.

### COUNT IV

### Against All Defendants for Abuse of Control

94. Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

95. The Individual Defendants' misconduct alleged herein constituted an abuse of their ability to control and influence Goodyear, for which they are legally responsible.

96. As a direct and proximate result of the Individual Defendants' abuse of control, Goodyear has sustained significant damages.

97. As a result of the misconduct alleged herein, the Individual Defendants are liable to the Company.

98. Plaintiff on behalf of Goodyear has no adequate remedy at law.

### COUNT V

### Against All Defendants for Gross Mismanagement

99. Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

100. By their actions alleged herein, the Individual Defendants, either directly or through

SCANLON & GEARINGER
Co., L.P.A.
ATTORNEYS AT LAW
FIRST NATIONAL TOWER
SUITE 1100
106 S. MAIN STREET
AKRON, OHIO 44308-1463
(330) 376-4558

aiding and abetting, abandoned and abdicated their responsibilities and fiduciary duties with regard to prudently managing the assets and business of Goodyear in a manner consistent with the operations of a publicly held corporation.

101.    As a direct and proximate result of the Individual Defendants' gross mismanagement and breaches of duty alleged herein, Goodyear has sustained significant damages in excess of hundreds of millions of dollars.

102.    As a result of the misconduct and breaches of duty alleged herein, the Individual Defendants are liable to the Company.

103.    Plaintiff on behalf of Goodyear has no adequate remedy at law.

## COUNT VI

### Against All Defendants for Waste of Corporate Assets

104.    Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

105.    As a result of the improper accounting, and by failing to properly consider the interests of the Company and its public shareholders by failing to conduct proper supervision, defendants have caused Goodyear to waste valuable corporate assets by paying incentive based bonuses to certain of its executive officers and incur potentially millions/billions of dollars of legal liability and/or legal costs to defend defendants' unlawful actions.

106.    As a result of the waste of corporate assets, the Individual Defendants are liable to the Company.

107.    Plaintiff on behalf of Goodyear has no adequate remedy at law.

## COUNT VII

### Against All Defendants for Unjust Enrichment

108.    Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

109.    By their wrongful acts and omissions, defendants were unjustly enriched at the expense of and to the detriment of Goodyear.

110.    Plaintiff, as a shareholder and representative of Goodyear, seeks restitution from these defendants, and each of them, and seeks an order of this Court disgorging all profits, benefits and

SCANLON & GEARINGER
Co., L.P.A.
ATTORNEYS AT LAW
FIRST NATIONAL TOWER
SUITE 1100
106 S. MAIN STREET
AKRON, OHIO 44308-1463
(330) 376-4558

other compensation obtained by these defendants, and each of them, from their wrongful conduct and fiduciary breaches.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff demands judgment as follows:

A.    Against all of the Individual Defendants and in favor of the Company for the amount of damages sustained by the Company as a result of the Individual Defendants' breaches of fiduciary duties, abuse of control, gross mismanagement, waste of corporate assets and unjust enrichment;

B.    Declaring that defendants Gibara, Keegan and Tieken are liable under the Sarbanes-Oxley Act of 2002 and requiring them to reimburse Goodyear for all bonuses or other incentive-based or equity based compensation received by them between 1998-2002.

C.    Extraordinary equitable and/or injunctive relief as permitted by law, equity and state statutory provisions sued hereunder, including attaching, impounding, imposing a constructive trust on or otherwise restricting the proceeds of defendants' trading activities or their other assets so as to assure that plaintiff on behalf of Goodyear has an effective remedy;

D.    Awarding to Goodyear restitution from the defendants, and each of them, and ordering disgorgement of all profits, benefits and other compensation obtained by the defendants;

E.    Awarding to plaintiff the costs and disbursements of the action, including reasonable attorneys' fees, accountants' and experts' fees, costs, and expenses; and

F.    Granting such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

DATED: October 24,  2003

WILLIAM J. LUCAS CO., L.P.A., Ltd.
WILLIAM J. LUCAS (Supreme Ct. # 0008268)

_William J. Lucas (JrS)_
WILLIAM J. LUCAS
1360 West 9th Street, Suite 200
Cleveland, Ohio 44113
Telephone: 216/771-8340
Facsimile: 216/522-9007
wjlucas@earthlink.net

SCANLON & GEARINGER
CO., L.P.A.
ATTORNEYS AT LAW
FIRST NATIONAL TOWER
SUITE 1100
106 S. MAIN STREET
AKRON, OHIO 44308-1465
(330) 376-4558

SCANLON & GEARINGER
JOHN SCANLON (Supreme Ct.#0064169)
106 S. Main Street, Ste. 1100
Akron, OH 44308
Telephone: 330/376-4558
Facsimile: 330/376-3550
johns@s-glaw.com

BARRETT, JOHNSTON & PARSLEY
GEORGE E. BARRETT
DOUGLAS S. JOHNSTON, JR.
TIMOTHY L. MILES
217 Second Avenue, North
Nashville, TN 37201
Telephone: 615/244-2202
Facsimile: 615/252-3798

J. DEWEY BRANSTETTER, JR.
JAMES G. STRANCH
BRANSTETTER, KILGORE, STRANCH &
JENNINGS
227 Second Avenue North
Nashville, TN 37201
Telephone: 615/254-8801
Facsimile: 615/255-5419

ROBBINS UMEDA & FINK, LLP
BRIAN J. ROBBINS
JEFFREY P. FINK
1010 Second Ave., Suite 2360
San Diego, CA 92101
Telephone: 619/525-3990
Facsimile: 619/525-3991

Attorneys for Plaintiff

SCANLON & GEARINGER
CO., L.P.A.
ATTORNEYS AT LAW
FIRST NATIONAL TOWER
SUITE 1100
106 S. MAIN STREET
AKRON, OHIO 44308-1463
(330) 376-4558

C:\Windows\Temporary Internet Files\OLK7034\VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT FOR BREACH OF FIDUCIARY DUTY.wpd

## VERIFICATION

Billy G. Borchert, certifies under penalty of perjury that (1) he is the chairman of the Plumbers and Pipefitters Local 572 Pension Fund, (2) the Fund has authorized the filing of this suit, (3) he has reviewed the Complaint against the current and former Board of Directors and certain officers of The Goodyear Tire & Rubber Company, and (4) that the foregoing is true to the best of his knowledge, information, and belief.

Dated: October 2 3, 2003

PLUMBERS & PIPEFITTERS LOCAL
572 PENSIONS FUND

By: _Billy G. Borchert_
     BILLY G. BORCHERT

Its: _Chairman_