ADAMS, J.

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| IN RE:  THE GOODYEAR TIRE & | ) | **LEAD CASE NO.  5:03CV2180** |
| RUBBER COMPANY DERIVATIVE | ) | 5:03CV2204; 5:03CV2374; |
| LITIGATION | ) | 5:03CV2468; 5:03CV2469 |
| | ) | |
| | ) | |
| | ) | JUDGE JOHN R. ADAMS |
| | ) | |
| | ) | <u>MEMORANDUM OF OPINION</u> |
| | ) | <u>AND ORDER</u> |
| | ) | [RESOLVING DOC. 59] |

This shareholder derivative action is before the Court upon defendants' Motion to

Dismiss the Amended Verified Consolidated Complaint (Doc. 59).  The Court has reviewed the

memorandum in support (Doc. 59-2), amended memorandum in opposition (Doc. 62), and reply

memorandum (Doc. 63) and has considered the entire record in this matter.  Samir G. Gibara,

Robert J. Keegan, Robert W. Tieken, Steven A. Minter, Agnar Pytte, John G. Breen, William J.

Hudson, Jr., James C. Boland, James M. Zimmerman, Gary D. Forsee, Susan E. Arnold, Martin

D. Walker, Kathryn D. Wriston, Edward T. Fogarty, Katherine G. Farley, George H. Schofield,

William C. Turner, Philip A. Laskawy, William E. Butler, Thomas H. Cruikshank (the

"Individual Defendants") and nominal defendant The Goodyear Tire & Rubber Company

("Goodyear" or the "Company")[1] move the Court to dismiss, with prejudice and in its entirety,

the 67-page and 140-paragraph Amended Verified Consolidated Complaint (the "Complaint")

---

[1]Goodyear joins in the within motion to the extent it seeks dismissal on demand
futility grounds.

(Doc. 49) pursuant to Rules 8(a), 9(b), 12(b)(6) and 23.1 of the Federal Rules of Civil Procedure. For the reasons set forth below, the Court will grant the motion. Plaintiffs did not comply with the applicable heightened pleading standard requirements of Fed. R. Civ. P. 23.1, nor did they sufficiently plead demand futility as required under Ohio law.

## I. Background

Plaintiffs Plumbers and Pipefitters Local 572 Pension Fund (the "Fund"), Vivian Golumbuski, Rafael Yanushevsky, James Wargo, and Ed Rhodes initially filed five separate shareholder derivative actions, two in the Summit County, Ohio Court of Common Pleas and three in this Court; the first of which, being Case No. 5:03CV2180, was filed in this Court on October 24, 2003. The state court actions were removed and this Court denied plaintiffs' motions to remand, holding that determination of the plaintiffs' claims depended on the resolution of federal questions under the federal securities laws. *See* Memorandum Opinion & Order (Doc. 36) at 4. On July 16, 2004, the plaintiffs filed the Complaint after all five actions were consolidated by order of this Court. *See* Consolidation Order (Doc. 22).

Plaintiffs own and hold, and at all times relevant to this action, owned and held shares of Goodyear common stock. Doc. 49 at ¶¶ 8-10. The Fund is a citizen of Tennessee, Golumbuski of Arizona, and Wargo of Pennsylvania. *Id.*

The Complaint asserts derivative claims on behalf of nominal defendant Goodyear against its present and former directors, its present and former chief executive officers (Keegan and Gibara, respectively), and its former chief financial officer (Tieken) stemming from the Company's announcement on October 22, 2003, that it intended to restate its financial results for

2

the period 1998-2002 and the first two quarters of 2003.[2]  Common to all of the plaintiffs' claims

is the assertion that the Individual Defendants caused Goodyear to misrepresent its financial

_____

[2]On October 23, 2003, following the announcement of the restatement, a purported class action lawsuit was filed against the Company in this Court on behalf of purchasers of Goodyear common stock alleging violations of the federal securities laws. After that date, a total of 20 of these purported class actions were filed against Goodyear in this Court.  These lawsuits named as defendants several of the Company's present or former officers and directors, including Keegan and Tieken, and alleged, *inter alia*, that Goodyear and the other named defendants violated federal securities laws by artificially inflating and maintaining the market price of Goodyear's securities. *See In re The Goodyear Tire & Rubber Company Securities Litigation*, Case No. 5:03CV2166.  On March 22, 2006, this Court dismissed the plaintiffs' claims against Goodyear and the Individual Defendants in the securities class actions because the plaintiffs failed to plead fraud and scienter with the particularity required by both Fed. R. Civ. P. Rule 9(b) and the Private Securities Litigation Reform Act ("PSLRA").  No appeal was taken from this decision.

Since October 27, 2003, eleven lawsuits have been filed in this Court against Goodyear, The Northern Trust Company, and current and/or former officers of Goodyear asserting breach of fiduciary duty claims under the Employee Retirement Income Security Act ("ERISA") on behalf of a putative class of participants in Goodyear's Employee Savings Plan for Bargaining Unit Employees and Goodyear's Savings Plan for Salaried Employees.  The plaintiffs' claims in these actions arise out of the same events and circumstances upon which the securities class actions and the within derivative actions are based. *See In re The Goodyear Tire & Rubber Company ERISA Litigation*, Case No. 5:03CV2182.  On July 6, 2006, this Court found that the plaintiffs have stated a claim under ERISA and denied defendants' Motion to Dismiss.

In addition, the Securities and Exchange Commission ("SEC") began an informal inquiry into Goodyear's restated finances in 2003 and opened a formal investigation in early 2004. Doc. 49 at ¶ 68.  The staff of the SEC issued "Wells notices" in August 2005 following the commission's investigation into Goodyear's accounting practices and the Company's restatement of earnings in 2003.  The "Wells notices" stated that they intended to recommend that the SEC take civil or administrative enforcement action against Goodyear and two individuals over the accounting issues.  Goodyear learned on March 28, 2006, that the SEC had decided not to act on the "Wells notice" issued to it. The SEC also decided that it would not recommend enforcement action against Tieken, who retired as chief financial officer, and Stephanie Bergeron, who retired as senior vice president of corporate financial operations. Defendants' Notice of Supplemental Information (Doc. 71); *see also Akron Beacon Journal*, March 30, 2006, at A1, 2006 WLNR 5295312.

results and prospects from 1998-2003 through improper accounting practices in violation of

Generally Accepted Accounting Principles ("GAAP"), SEC rules, and federal and state law.

Doc. 49 at ¶¶ 5-6, 33, and 77-78.  The Complaint alleges that the Individual Defendants "caused"

Goodyear to issue a series of allegedly false press releases and financial statements from 1998 to

July 2003. *Id.* at ¶¶ 47-66.  Plaintiffs allege that the defendants breached their fiduciary duties by

failing to oversee Goodyear's management, policies, practices and internal controls (*see, e.g.*, *id.*

at ¶¶ 6, 78, 87, 88, 95, 96, and 99), and misrepresenting or failing to disclose material non-public

information regarding the Company's financial condition and prospects (*see, e.g.*, *id.* at ¶¶ 39

and 47-75).  Plaintiffs claim that Goodyear and its shareholders suffered damages as a result of

the defendants' breaches of duty.

Count I against Gibara, Keegan, and Tieken (the "Officer Defendants") alleges a private

right of action under Section 304 of the Sarbanes-Oxley Act of 2002, 15 U.S.C. § 7243.  Count II

against Gibara ("the Insider Selling Defendant") asserts a derivative claim for breach of

fiduciary duties for insider selling and misappropriation of information.  According to the

plaintiffs, the Company is entitled to the imposition of a constructive trust on any profits Gibara

obtained through his insider trading, since the use of the Company's proprietary information for

his own gain constitutes a breach of his fiduciary duties. Doc. 49 at ¶ 117.  Counts III through

VII allege state law claims against the Individual Defendants as a group.  Count III is for breach

of fiduciary duty (good faith, loyalty, due care, reasonable inquiry, oversight, and supervision).

Count IV asserts a claim for abuse of control.  Count V is for gross mismanagement.  Count VI

asserts a claim for corporate waste.  Plaintiffs allege that throughout the five years of misstated

financial statements due to the improper accounting and poor internal controls, there was

4

simultaneously a waste of corporate assets (such as the incentive based bonuses paid to certain executive officers) and subsequently the exorbitant legal fees they now face as a result of their improper actions. *Id.* at ¶¶ 78, 95, 96, and 135.  Finally, Count VII is for unjust enrichment.

Goodyear is a corporation organized under the laws of the State of Ohio and was incorporated in 1898.  Headquartered in Akron, Ohio, the Company is the world's largest tiremaker--manufacturing tires, engineered rubber products and chemicals in more than 80 facilities located in 28 countries.  It operates through various business segments including North American Tire, European Union Tire, Eastern Europe, Africa and Middle East Tire, Latin American Tire, Asia Tire, Engineered Products, and Chemical Products. *Id.* at ¶ 11.

Gibara, Keegan, Minter, Pytte, Breen, Hudson, Boland, Zimmerman, Forsee, Arnold, Walker, Wriston, Fogarty, Farley, Schofield, Turner, Laskawy, Butler, and Cruikshank are current and/or former directors of Goodyear (the "Director Defendants"). *Id.* at ¶¶ 12-13 and 15-31.  Gibara and Keegan, along with Tieken, are the only defendants alleged to be current and/or former members of Goodyear's management. *Id.* at ¶¶ 12-14.  Eleven of the twenty Individual Defendants--Gibara, Keegan, Minter, Pytte, Breen, Hudson, Boland, Zimmerman, Forsee, Arnold, and Fogarty[3]--are alleged to have comprised Goodyear's Board "at the time of the filing of the Verified Derivative Complaint" (the "Current Director Defendants"). *Id.* ¶ 85.

Although the law vests the power to manage the business and affairs of the corporation in the officers and directors, that power is not unfettered.  A derivative action provides shareholders with an effective and speedy means of enforcing corporate governance standards when such

---

[3]Fogarty left Goodyear's Board in May 2003.  Therefore, the relevant board for purposes of considering a demand consists of only the remaining ten Current Director Defendants.

5

enforcement would be otherwise elusive.  As the United States Supreme Court wrote in *Kamen v. Kemper Financial Services, Inc.*, 500 U.S. 90 (1991):  "[T]he purpose of the derivative action [is] to place in the hands of the individual shareholder a means to protect the interests of the corporation from the misfeasance and malfeasance of 'faithless directors and managers.'" *Id.* at 95  (quoting *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 548 (1949)).

> This remedy born of stockholder helplessness was long the chief regulator of corporate mismanagement and has afforded no small incentive to avoid at least grosser forms of betrayal of stockholders' interests.  It is argued, and not without reason, that without it there would be little practical check on such abuses.

*Cohen*, 337 U.S at 548.

## II. Applicable Pleading Standards

In considering the typical motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the Court "must construe the complaint in a light most favorable to the plaintiff, accept all of the factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of his claims that would entitle him to relief." *Columbia Natural Resources, Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995) (citing *Allard v. Weitzman (In re DeLorean Motor Co.)*, 991 F.2d 1236, 1240 (6th Cir. 1993)).  If an allegation is capable of more than one inference, the Court must construe it in the plaintiff's favor. *Id.*  The Court may not grant a Rule 12(b)(6) motion merely because it may not believe a plaintiff's factual allegations. *Id.*  Although this is a liberal standard of review, the plaintiff still must do more than merely assert bare legal conclusions. *Id.*  To survive a Rule 12(b)(6) motion to dismiss, the plaintiff's complaint must allege either "direct or inferential" allegations regarding all of the material elements necessary to sustain recovery under "some" viable legal theory. *Id.*

6

A corporate shareholder may assert a derivative action in federal court under Fed. R. Civ. P. 23.1.[4]  This rule requires that the plaintiffs "allege with particularity" all efforts made by the plaintiffs to demand action from the board of directors, or the reasons for failing to make a pre-suit demand.  The heightened pleading standard requirements of Rule 23.1 "serves the very important purpose of ensuring that before a shareholder derivative suit is brought, the company's board of directors has considered all possible intracorporate remedies." *Grand Council of Ohio v. Owens*, 86 Ohio App.3d 215, 221-22 (1993) (quoting *Smachlo v. Birkelo*, 576 F.Supp. 1439, 1443 (D. Del. 1983)).

### III. Analysis

*A.      Demand Futility*

The Supreme Court made clear in *Kamen*, *supra*, that whether the failure to make a demand is excused must be determined under the substantive law of the state of incorporation, even when derivative claims are brought before a federal court. 500 U.S. at 96-97; *McCall v. Scott*, 239 F.3d 808, 815-16 (6th Cir. 2001); *see also In re FirstEnergy Holder Derivative Litig.*, 320 F.Supp.2d 621, 623-24 (N.D. Ohio 2004) (citing *Kamen*, 500 U.S. at 96-97).  The parties agree that since Goodyear is an Ohio corporation, the Court applies Ohio law to decide whether demand on the board would have been futile. *See* Doc. 59-2 at 8 n. 4 and Doc. 61 at 9 n. 5.

---

[4]Rule 23.1 provides in pertinent part:

. . . The complaint shall also allege with particularity the efforts, if any, made by the plaintiff to obtain the action the plaintiff desires from the directors or comparable authority and, if necessary, from the shareholders or members, and the reasons for the plaintiff's failure to obtain the action or for not making the effort. . . .

In a shareholder derivative action, a derivative plaintiff must first demand that the board of directors take the desired action prior to filing suit or set forth, "with particularity," the reasons for not doing so. *See* Fed. R. Civ. P. 23.1; *Weston v. Weston Paper & Mfg. Co.*, 74 Ohio St.3d 377, 379 (1996) (discussing Ohio R. Civ. P. 23.1).  Ohio law recognizes an exception to the general pre-suit demand requirement "when the shareholder can demonstrate that the demand would have been futile." *Drage v. Procter & Gamble*, 119 Ohio App.3d 19, 25 (1997).  In this context, "[f]utility means that the directors' minds are closed to argument and that they cannot properly exercise their business judgment in determining whether the suit should be filed." *Id.*

Plaintiffs in the case at bar did not demand board action before they filed these lawsuits. The Court concludes that the plaintiffs' failure to make a pre-suit demand to the board can not be excused on the basis of futility for the reasons that follow.

Plaintiffs allege that

demand on the Goodyear Board to institute this action against themselves and certain officers and directors of Goodyear is not necessary because such a demand would be a futile and useless act.  Not only would this require them to investigate claims against themselves for their own misconduct, but their actions to date prove conclusively that they will not take action.  For the following reasons, demand upon the Board is futile.

Doc. 49 at ¶ 84.  According to the plaintiffs, the Complaint at ¶¶ 81-109 contains twenty pages of particularized allegations demonstrating demand futility, including detailed facts that, if proven at trial, demonstrate that the Director Defendants, through their actions and inaction, breached their fiduciary duties to Goodyear and its shareholders.  The Complaint alleges how each director is a member of at least one of the standing committees of the Board.  As alleged in the Complaint, the members of the Audit Committee, the Nominating and Board Governance Committee, the Committee on Corporate Responsibility, and the Executive Committee were

8

charged with ensuring Goodyear's business integrity and the Board's compliance with their fiduciary activities. *Id.* at ¶ 87-91.  Moreover, the Complaint alleges that as a result of their position, each committee member knew that the supervisory and monitoring controls for the Company were inadequate but "deliberately looked the other way" and allowed the Company to engage in wrongful and potentially criminal activities. *Id.* at ¶¶ 77, 78, 87, 95, 96, and 110-40. Plaintiffs, however, fail to allege in any detail what each individual committee member did or did not do to supposedly breach his or her duties.  The Complaint does not include a single specific fact showing how any committee member was complicit in the alleged wrongdoing.

Plaintiffs allege that the defendants on the Audit Committee (Boland, Breen, Fogarty, Forsee, and Hudson) ("Audit Committee Defendants") bear direct responsibility for the Company's wrongdoing, as these directors are specifically charged with the responsibility for insuring the accuracy and adequacy of Goodyear's financials and financial reporting under Goodyear's Audit Committee Charter. *Id.* at ¶ 88.  According to the plaintiffs, "[t]he Audit Committee violated their own charter by failing to hold the requisite number of meetings during the fiscal years within the relevant time period, including 2001 (met three times), 2000 (met three times) and 1998 (met three times)." *Id.*  As the defendants correctly point out, however, the committee was in full compliance with its charter in effect at the time because it was to hold meetings "as called by the Chairman of the Committee" and that the "Committee shall normally

conduct three meetings each year." *See* Doc. 63-2 at 2.[5]

Defendants on the Nominating and Board Governance Committee (Zimmerman, Arnold, Fogarty, Minter, and Pytte) ("Nominating and Governance Defendants") are alleged to be responsible for nominating directors to serve on the Board of Directors and to monitor their performance. Doc. 49 at ¶ 89.  The Complaint alleges that Nominating and Governance Defendants breached their oversight responsibilities by allowing various directors to maintain their positions of corporate governance in spite of their violations of their fiduciary duties. Plaintiffs argue that because Nominating and Governance Defendant Fogarty was also on the Audit Committee, he knew that fellow directors were causing Goodyear to issue materially inaccurate financial statements, and yet failed to take action pursuant to his oversight duties.

Plaintiffs allege that the defendants on the Committee on Corporate Responsibility (Minter, Arnold, Fogarty, Forsee, and Pytte) ("Corporate Responsibility Defendants") are specifically charged with oversight responsibilities at Goodyear, including reviewing Goodyear's legal compliance programs, monitoring its business conduct policies and practices, and maintaining the Company's good relationships with shareholders, employees, customers, governmental agencies, and the general public. *Id.* at ¶ 90.  The Complaint alleges that the Corporate Responsibility Defendants failed to fulfill their oversight duties by failing to halt or otherwise impede the questionable accounting practices that led to Goodyear's non-compliance with federal securities laws and potential civil and criminal liability. *Id.*  Plaintiffs argue that two

---

[5]In conjunction with their reply memorandum in support of the motion to dismiss, the defendants submitted a copy of the Audit Committee Charter that was not included in the Complaint.  The operative charter can be considered part of the pleadings because the plaintiffs referred to the Audit Charter in the Complaint. *See Weiner v. Klais and Co., Inc.*, 108 F.3d 86, 89 (6th Cir. 1997).

of the Corporate Responsibility Defendants (Fogarty and Forsee), who are also members of the Audit Committee, participated willfully in the wrongful conduct alleged of the Audit Committee Defendants.

Finally, the defendants on the Executive Committee (Gibara, Breen, Boland, Hudson, Minter, and Zimmerman) ("Executive Committee Defendants") are alleged to be the chairpersons from each of the committees of Goodyear's Board and the Chairman of the Board. *Id.* at ¶¶ 87and 91.  The Executive Committee Defendants are alleged to have reviewed the implementation of Goodyear's financial and business operations during the relevant period. *Id.* at ¶ 91.  Importantly, the Complaint alleges that various members of this committee participated knowingly in the wrongful conduct, particularly Boland from the Audit Committee who recommended erroneous financial reporting, *id.* at ¶¶ 5-7, 67-69, 87, 88, and 95-97, and Gibara, who is alleged to have participated in insider trading, *id.* at ¶¶ 12, 44, and 92-94.  As a result of this knowledge, which is imputed to all Executive Committee Defendants, the Complaint alleges that all members of this committee breached their oversight responsibilities. *Id.* at ¶ 91.

While the plaintiffs point to the directors' membership on various standing committees as evidence of alleged wrongdoing, these allegations, like those in the remainder of the Complaint, are highly generalized and provide no specific facts indicating a nexus between any individual committee member and any inappropriate action or failure to act. *See In re Xcel Energy, Inc. Sec., Derivative & "ERISA" Litig.*, 222 F.R.D. 603, 607-608 (D. Minn. 2004) (complaint failed to justify shareholder's failure to make a pre-suit demand).

Plaintiffs argue that a pre-suit demand would be a useless and futile gesture because the Individual Defendants would each lose their insurance coverage if they brought an action against themselves or each other, commonly referred to as the "insured versus insured" allegation. Doc. 62 at 31.  In *Drage*, *supra*, an Ohio Court of Appeals stated:

> Certainly, a provision prohibiting directors from bringing suits against each other would deprive the directors of the ability to exercise independent judgment as to the advisability of instituting action against any officer or director for mismanagement, and thereby [divest them] of the power to govern this aspect of the corporation's affairs.

119 Ohio App.3d at 27 (internal quotation marks and citation omitted).  However, the Court agrees with the rationale for rejecting *Drage*'s dicta, *id.* at *7-8, and the conclusion reached by the late United States District Judge John M. Manos in *In re Ferro Corp. Derivative Litigation*, No. 1:04CV1626, 2006 WL 2038659 (N.D. Ohio March 21, 2006), appeal docketed, No. 06-3816 (6th Cir. June 13, 2006), that "if the Ohio Supreme Court were to address this issue, it would not follow the dicta in *Drage* and would rather conclude that the existence of an 'insured versus insured' exclusion does not excuse pre-suit demands in derivative litigation." *Id.* at *8.

The Court also finds that the plaintiffs demand futility allegations that the Current Director Defendants would not sue themselves or their colleagues, that they were paid for their service on the Board, and that parallel class action litigation is pending are insufficient.

The Complaint asserts that demand would be futile as to Gibara based on allegations that he engaged in illegal insider trading when he sold shares of Goodyear stock during the relevant period. Doc. 49 at ¶ 105(a).  Gibara sold 7,200 shares of Goodyear stock for proceeds of $449,382 during the relevant six-year period. *Id.* at ¶ 12.  Demand may be excused for insider trading if a reasonable doubt exists that a majority of the board is incapable of exercising its

12

disinterested business judgment in considering a demand.  Only Gibara is alleged to have

engaged in insider trading.  Because a majority of the directors are not alleged to have engaged

in insider trading, the Court finds that the plaintiffs' insider trading allegations do not raise a

reasonable doubt that the Board is incapable of being impartial in considering a demand.

Assuming *arguendo* that the Court were to find that the plaintiffs' allegations were

sufficiently particularized to excuse demand as to some of the Current Director Defendants for

demand to be excused, a <u>majority</u> of the directors on the Goodyear Board as it existed at the time

of suit must be subject to a disqualifying interest. *McCall*, 239 F.3d at 826; *Drage*, 119 Ohio

App.3d at 29.  Here, the plaintiffs' allegations certainly do not excuse demand as to a majority of

the Current Director Defendants.

Even though the Court holds that the plaintiffs have failed to plead adequately that a

pre-suit demand should be excused, the Court will nevertheless provide the following analysis of

the remaining issues raised by the defendants in their motion to dismiss.

B.      *Claim Under Section 304 of the Sarbanes-Oxley Act of 2002*

Count I against the Officer Defendants alleges a private right of action under Section 304

of the Sarbanes-Oxley Act of 2002.  Section 304 allows for the disgorgement of bonuses and

profits by a corporation's CEO or CFO when material noncompliance with reporting

requirements and misconduct require the restatement of a corporation's financial statements.  It

provides:

> **(a) Additional compensation prior to noncompliance with Commission
> financial reporting requirements**
> If an issuer is required to prepare an accounting restatement due to the material
> noncompliance of the issuer, as a result of misconduct, with any financial
> reporting requirement under the securities laws, the chief executive officer and

chief financial officer of the issuer shall reimburse the issuer for--

>   (**1**) any bonus or other incentive-based or equity-based
>   compensation received by that person from the issuer during the
>   12-month period following the first public issuance or filing with
>   the Commission (whichever first occurs) of the financial document
>   embodying such financial reporting requirement; and
>   (**2**) any profits realized from the sale of securities of the issuer
>   during that 12-month period.

**(b) Commission exemption authority**

The Commission may exempt any person from the application of subsection (a) of
this section, as it deems necessary and appropriate.

15 U.S.C. § 7243.

Plaintiffs argue that Section 304's text, the Act's statutory construction and legislative history, and the purpose underlying Section 304 all favor finding the existence of an implied private right of action.  Plaintiffs cite *In re AFC Enters., Inc. Derivative Litig.*, 224 F.R.D. 515 (N.D. Ga. 2004) and *In re Ariba, Inc. Derivative Litigation*, No. C-03-02172 JF (PVT) (N.D. Cal. filed Nov. 13, 2003).  The United States Court of Appeals for the Sixth Circuit has not ruled on this issue.

The Court holds that no private right of action exists under Section 304 of the Sarbanes-Oxley Act of 2002.  The Court is persuaded by the well-reasoned decision in *Neer v. Pelino*, 389 F.Supp.2d 648 (E.D. Pa. 2005) (court dismissed the Section 304 claim on the merits because it found the statutory section does not provide a private right of action), appeal docketed, No. 05-4830 (3d Cir. Nov. 2, 2005).[6]  The court in *In re Whitehall Jewellers, Inc.*

---

[6]The Court notes that an appeal was also filed before the United States Court of Appeals for the Second Circuit regarding whether Section 304 contains a private right of action. *See In re BISYS Group Inc. Derivative Action*, 396 F.Supp.2d 463 (S.D.N.Y. 2005) (following *Neer*), appeal docketed, No. 05-6543 (2d Cir. Dec. 5, 2005).  On October 31, 2006, the Second Circuit approved the stipulation of the parties to withdraw the appeal with prejudice.

*Shareholder Derivative Litigation*, No. 05 C 1050, 2006 WL 468012, at *7-8 (N.D. Ill., Feb. 27, 2006), also agreed with the analysis employed in *Neer*.  Additionally, in *Kogan v. Robinson*, 432 F.Supp.2d 1075, 1082 (S.D. Cal. 2006),[7] and *In re Digimarc Corp.*, No. 05-1324-HA (LEAD), 2006 WL 2345497, at *3 (D. Or., Aug. 11, 2006), appeal docketed, *Sheehan v. Davis*, No. 06-35838 (9th Cir. Oct. 4, 2006), the district courts concluded that Section 304 contains no private right of action.  In the absence of binding authority, this Court is free to consider the above-mentioned cases as persuasive authority on which it bases its decision.

Even if Section 304 did create a private right of action, it still would not apply to the vast majority of the alleged wrongful conduct about which the plaintiffs complain, because that alleged conduct took place prior to the statute's enactment in July 2002.  Nothing in the text of Section 304 suggests retroactive application of any of its provisions. *See In re AFC Enters., Inc. Derivative Litig.*, 224 F.R.D. at 521 ("There is no 'clear indication' from Congress that this forfeiture provision [Section 304] of the Sarbanes-Oxley Act was intended to have retroactive application to misconduct which occurred before its effective date.")

C.      *Insider Trading Claim*

Plaintiffs fail to state an insider trading claim against Gibara.  Ohio law does not recognize a derivative claim for insider trading.  Moreover, the viability of *Brophy v. Cities Service Co.*, 70 A.2d 5 (Del. Ch. 1949), the leading case recognizing a derivative cause of action for insider trading, has been called into question.  *In re Oracle Corp. Deriv. Litig.*, 867 A.2d 904 (Del. Ch. 2004), *aff'd*, No. 561,2004, 2005 WL 877903 (Del. Supr. April 14, 2005) involved

---

[7]Last month, the United States Court of Appeals for the Ninth Circuit approved the stipulation of the parties to dismiss the appeal without prejudice to its reinstatement. *Kogan v. Robinson*, No. 06-55922 (9th Cir. Nov. 24, 2006).

15

claims brought by minority shareholders that two of the top officers at Oracle Corporation breached their fiduciary duty of loyalty to the corporation by selling stock in the company when they possessed material, adverse, non-public information that Oracle would not meet its projections for that quarter. *Id.* at 905.  Plaintiffs contended that the officers had thus reaped ill-gotten gains on their sales that should be returned to the company.  The Delaware Court of Chancery, on defendants' motion for summary judgment, rejected the plaintiffs' argument. Initially the court considered the applicable standard to apply in an insider trading case involving an alleged breach of fiduciary duty.  As part of this analysis, and despite the court's skepticism as to whether *Brophy*, *supra*, remains good law, the court underwent a *Brophy* analysis, finding that even if the *Brophy* standard applied, the defendants were entitled to summary judgment because "the record simply will not support a rational inference of wrongdoing." *Oracle*, 867 A.2d at 907.

As previously stated, Gibara sold 7,200 shares of Goodyear stock during the relevant period (Doc. 49 at ¶ 12)--a six year period.  Publicly-filed documents (Docs. 59-3 and 59-4), of which this Court takes judicial notice,[8] show that Gibara actually *increased* his Goodyear stock holdings during the relevant period.  Even if the Court were to recognize a new cause of action under Ohio law for insider trading, such an increase during a period of time so remote from the

---

[8]"Because insider corporate executives must document their stock transactions (on a Form 4, Statement of Changes in Beneficial Ownership) and file the documents with the SEC, these documents are public records that may appropriately be reviewed on a motion to dismiss." *In re Enron Corp. Securities, Derivative & ERISA Litigation*, 258 F.Supp.2d 576, 593 n. 12 (S.D. Tex. 2003); *see also New England Health Care Employees Pension Fund v. Ernst & Young, LLP*, 336 F.3d 495, 501 (6th Cir. 2003) ("A court that is ruling on a Rule 12(b)(6) motion may consider materials in addition to the complaint if such materials are public records or are otherwise appropriate for the taking of judicial notice.").

restatement announcement is inconsistent with the theory that Gibara was "dumping" his Goodyear shares.

D.      *Breach of Fiduciary Duty Claims*

Next, the defendants argue that the plaintiffs' fiduciary duty claims here implicate only the Individual Defendants' duty of care. Whether Counts II through VII are viewed as six separate claims for breach of fiduciary duty, or one claim for breach of fiduciary duty based on six types of improper conduct, Ohio law makes clear that the defendants in the case at bar cannot be liable in damages for such non-intentional breaches.

A director or officer may be held liable in damages for a breach of fiduciary duty under Ohio law only where he has acted with "deliberate intent" or "reckless disregard." Ohio Rev. Code § 1701.59(D). Plaintiffs plead only in conclusory terms that the Individual Defendants, as a group, knew or should have known of the inaccuracy of the statements about which the plaintiffs complain. They argue that the defendants' reliance on § 1701.59(D) at this stage of the case is misplaced. In *Abrahamson v. Waddell*, 63 Ohio Misc.2d 270 (1992), however, the court of common pleas dismissed the consolidated matter in part pursuant to Ohio Civ. R. 12(B)(6), where it found "Plaintiffs have pled no facts, as distinct from generalized conclusions, which if proved would overcome the presumption of good faith and satisfy the requirements of R.C. 1701.59(D)." *Id.* at 273.

Ohio law protects directors from a duty of care claim. Ohio Rev. Code § 1701.59(B) generally describes the standard of care to which a corporation's directors are held in Ohio. It expressly entitles fiduciaries to rely on both internal and external experts in executing their

duties:

> . . . In performing a director's duties, a director is entitled to rely on information, opinions, reports, or statements, including financial statements and other financial data, that are prepared or presented by . . . directors, officers, or employees of the corporation who the director reasonably believes are reliable and competent in the matters prepared or presented; . . . [c]ounsel, public accountants, or other persons as to matters that the director reasonably believes are within the person's professional or expert competence; [and,] [a] committee of the directors upon which the director does not serve . . . as to matters within its designated authority, which committee the director reasonably believes to merit confidence.

Ohio Rev. Code § 1701.59(B).  The fiduciary will be considered to be acting in bad faith only if he "has knowledge concerning the matter in question that would cause reliance on [such] information, opinions, reports, or statements . . . to be unwarranted." Ohio Rev. Code § 1701.59(C)(2).

Goodyear's public filings--which include the information upon which the plaintiffs relied in framing the Complaint--reflect that the Company retained an independent auditor, PricewaterhouseCoopers LLP, who reviewed Goodyear's financial statements and certified in its Report of Independent Auditors that the financial statements "present fairly, in all material respects, the financial position" of Goodyear and its subsidiaries as of the date of the Report. *See, e.g.*, 2003 Form 10-K at 59.

Plaintiffs allege that the Individual Defendants "knew that the supervisory and monitoring controls for the company were inadequate." Doc. 49 at ¶ 105(a); *see also id.* at ¶ 105(c-k).   However, this allegation merely repeats the statutory language in the negative; it is wholly unsupported by facts that might lead to such a conclusion.  As such, it is insufficient to show that the Individual Defendants are not entitled to the protection extended by the statute. *See In re Telxon Corp. Securities Litigation*, 133 F.Supp.2d 1010, 1024 (N.D. Ohio 2000) ("[T]he

18

Court need not accept as true a legal conclusion couched as a factual allegation.  A well-pleaded allegation is one that alleges specific facts and does not merely rely upon conclusory statements.") (citation omitted).

Defendants contend that Ohio's business judgment rule requires dismissal of the plaintiffs' fiduciary duty claims.  Ohio Rev. Code § 1701.59(C)(1) provides that a director is presumed to act in accordance with his statutorily defined fiduciary duties "unless it is proved by clear and convincing evidence that the director has not acted in good faith, in a manner the director reasonably believes to be in or not opposed to the best interests of the corporation, or with the care that an ordinarily prudent person in a like position would use under similar circumstances."[9]  In other words, "[t]he decisions of disinterested [fiduciaries] will not be disturbed if they can be attributed to any rational business purpose." *Koos v. Cent. Ohio Cellular, Inc.*, 94 Ohio App.3d 579, 590 (1994).  Plaintiffs in the case at bar do not show in their allegations that the Individual Defendants are not entitled to the presumption of the  business judgment rule that they exercised their duties with due care, without self-dealing, and in good faith.

E.      *Fed. R. Civ. P. 9(b) and the PSLRA*

The Court does not share the view of the plaintiffs that "the Rule 8 'short and plain statement' standard, not Rule 9 or the PSLRA, applies here." Doc. 62 at 34.  Even if the

---

[9]Section 1701.59(C)(1) is "intended to make it clear that a director has the benefit of a presumption that he is acting in good faith and in a manner he reasonably believes is in (or not opposed to) the best interests of the corporation in all cases." Ohio Rev. Code § 1701.59(C) 1986 Committee Cmt.  It "adopts . . . in Ohio a statutory statement of the standard of care for directors derived from the common law[] '[b]usiness [j]udgment [r]ule.'" Ohio Rev. Code § 1701.59 1980 Committee Cmt.

plaintiffs could state a claim against the Individual Defendants for breach of fiduciary duty, they

fail to do so here, because their allegations sound in securities fraud[10] and are not pleaded with

the particularity required by Fed. R. Civ. P. 9(b),[11] let alone the heightened standard of the

PSLRA. *See Mulbarger v. Royal Alliance Associates., Inc.*, No. C-2-96-0743, 1999 WL

33432317, at *2 (S.D. Ohio Dec. 22, 1999) ("The Rule 9(b) particularity requirement also

applies to claims of breach of fiduciary duty predicated upon fraud."); *see also Dollens v. Zionts*,

No. 01 C02826, 2002 WL 1632261, at *8 (N.D. Ill. July 22, 2002) (applying Rule 9(b) standard

to plaintiffs' claims for breach of fiduciary duty in a derivative action that arose from the same

operative facts as those identified in a companion class action securities fraud complaint).

Plaintiffs make unsupported assertions and fail to plead more than bare legal conclusions.  They

merely identify the Individual Defendants as officers or directors of Goodyear; allege they were

---

[10]   It is undisputed that Plaintiffs' complaints reference federal securities law.  Plaintiffs [Wargo and Rhodes], however, argue that these references operate as "peripheral background facts" that merely form the basis of their complaints.  This Court disagrees.  Although Plaintiffs do not allege, per se, federal causes of action, their complaints make direct references to federal securities law and to Defendants' alleged violations of those laws.

* * *

. . . Although Plaintiffs may see their references to violations of federal law as mere "support" for their state law claims, a determination of whether Defendants have violated federal law is necessary given the fact that the complaints themselves plead that the causes of action are premised, in large part, on those violations.

Doc. 36 at 3-4.

[11]Fed. R. Civ. P. 9(b) provides in pertinent part:  "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity."

members of certain Board committees; and repeat the conclusion that the Individual Defendants, as a group, "were able to and did, directly and/or indirectly, exercise control over the wrongful acts complained of herein, as well as, the contents of the various public statements issued by the Company" because they were directors and officers of Goodyear and "participated in the issuance of false and/or misleading statements." *See*, *e.g.*, Doc. 49 at ¶¶ 12-29 and 35.

In *In re FirstEnergy Shareholder Derivative Litigation*, 219 F.R.D. 584 (N.D. Ohio 2004), United States District Judge James S. Gwin stated:  "Although the securities fraud claims and the shareholder derivative claims include similar facts, this is insufficient to bring the state law derivative claims within the ambit of the PSLRA.  The Lead Plaintiffs do not make any federal securities law claims." *Id.* at 586 (citation omitted).  Plaintiffs' claims in the case at bar, however, are based on violations of federal securities laws prohibiting securities fraud.  The PSLRA requires that

> [i]n any private action arising under this chapter in which the plaintiff may recover money damages only on proof that the defendant acted with a particular state of mind, the complaint shall, with respect to each act or omission alleged to violate this chapter, state *with particularity* facts giving rise to a strong inference that the defendant acted with the required state of mind.

15 U.S.C. § 78u-4(b)(2) (emphasis added).  Furthermore, "the court shall, on the motion of any defendant, dismiss the complaint if the requirements of paragraph[] . . . (2) are not met." 15 U.S.C. § 78u-4(b)(3)(A).  The Court concludes that the plaintiffs' claims in the case at bar are not pleaded with the requisite particularity.  This is especially true with regard to the allegations concerning the state of mind of the Individual Defendants.

Plaintiffs lump all of the Individual Defendants together for pleading purposes,

and allege in conclusory terms that "defendants" together made false statements or permitted such statements to be made. *See, e.g.*, Doc. 49 at ¶¶ 12-32.  A "group pleading" exception to the pleading-with-particularity requirements of Fed. R. Civ. P. 9(b) is premised on the assumption that "[i]n cases of corporate fraud where the false or misleading information is conveyed in prospectuses, registration statements, annual reports, press releases, or other 'group-published information,' it is reasonable to presume that these are the collective actions of the officers." *City of Monroe Employees v. Bridgestone*, 399 F.3d 651, 689 (6th Cir. 2005) (quoting *Wool v. Tandem Computers Inc.*, 818 F.2d 1433, 1440 (9th Cir. 1987)).

The United States Court of Appeals for the Fifth Circuit and a number of district courts have held that the group-pleading doctrine is foreclosed by the passage of the PSLRA. *See Southland Sec. Corp. v. INSpire Ins. Solutions, Inc.*, 365 F.3d 353, 364 (5th Cir. 2004) (collecting cases).  Generally without discussion of the effect of the PSLRA, the circuits that embraced the group-pleading doctrine prior to the passage of the Reform Act have continued to apply that doctrine since the enactment of the PSLRA. *See Howard v. Everex Sys., Inc.*, 228 F.3d 1057, 1061-63 (9th Cir. 2000); *Schwartz v. Celestial Seasonings, Inc.*, 124 F.3d 1246, 1254 (10th Cir. 1997).  The Court of Appeals for the Sixth Circuit has not taken a position on whether such an exception exists. *City of Monroe Employees*, 399 F.3d at 689-90.  Courts are divided on this issue. *Id.* at 690 n. 33 (collecting cases).[12]

---

[12]It is to be noted, however, that the Sixth Circuit declined to overturn this court's previous affirmation of the group-pleading doctrine's continued viability in *In re Century Business Services Securities Litigation*, No. 1:99CV02200, 2002 WL 32254513, at *12-13 (N.D. Ohio June 27, 2002) (Matia, C.J.), *aff'd*, *Darby v. Century Business Services, Inc.*, 96 Fed.Appx. 277 (6th Cir. 2004).

F.      *Leave to Amend*

At the conclusion of their amended memorandum in opposition (Doc. 62), the plaintiffs summarily request leave to amend their complaint in the event this Court determined dismissal was appropriate.  In view of the fact that the plaintiffs have failed to articulate what additional facts they would allege in a Second Amended Verified Consolidated Complaint, the request is denied. *See PR Diamonds, Inc. v. Chandler*, 364 F.3d 671, 699 (6th Cir. 2004) ("*Plaintiffs were not entitled to an advisory opinion from the Court informing them of the deficiencies* of the complaint and then an opportunity to cure those deficiencies.") (quoting *Begala v. PNC Bank, Ohio, Nat'l Ass'n*, 214 F.3d 776, 784 (6th Cir. 2000) (emphasis in original).

## IV. Conclusion

For all the foregoing reasons, defendants' Motion to Dismiss the Amended Verified Consolidated Complaint (Doc. 59) is GRANTED.   The Amended Verified Consolidated Complaint will be dismissed.


IT IS SO ORDERED.


 January 5, 2007                                        */s/ John R. Adams*
Date                                                    John R. Adams
                                                        U.S. District Judge

23